Parker, C. J.
The substance of the voluminous disclosure made by Whiting, the supposed trustee in this case, is, that, on the third day of June, 1811, the firm of Goodwin & Whiting, then rep resented by the defendant, Whiting, his partner, being dead, was indebted to him in about $ 2000 for money lent, and that he was liable for that company, as surety on bonds to the United States, and as indorser of their negotiable securities, to the amount of $ 7000 more ; that, being desirous to obtain security, he pressed Goodwin for it, who refused to secure him, unless he would purchase his stock of merchandise on hand, that he might be able to pay his most pressing debts, his affairs * being at that time em- [ * 141 j barrassed, but he representing himself, and being believed ' by the trustee, to have much more property than was necessary to pay the debts of the house ; that R. Whiting consented to become the purchaser of his stock, &c., and a rough estimate was made ol the value of the articles, for which, after deducting the amount of money lent, Whiting gave his promissory note, payable to Goodwin or his order in six months from its date ; that at the same time certain debts, due to the house, to the amount of $ 9,000 or $ 10,000, as calculated at the time, were assigned over to Whiting, to secure him against his liabilities for the house, he agreeing to account with *126 Goodwin for the balance, after paying the debts for which he was liable, and also obligating himself to pay those debts ; that a vessel then at the Southward was also conveyed to Whiting, who agreed to make the necessary advances to fit her for sea ; and certain shares in the Exchange Coffee House were also assigned to him at an estimated value. This transaction took place under circumstances which indicated strong apprehensions of an immediate failure by Goodwin. The evening and night of Sunday were occupied in making the transfers, and early on Monday morning Whiting took possession of the merchandise in the store, and on the same day accepted an order, drawn by Goodwin in favor of Rufus Ellis, one of his creditors, for whatever might remain in his hands after paying the amount of his note and bonds. There are many other circumstances disclosed in the answers to the interrogatories, which go strongly to show such a trust and confidence between Whiting and Goodwin as would undoubtedly have avoided the transfer, had any other creditor attached the property while in Whiting's possession, and before he had paid the consideration in the manner afterwards stated in his answers. Indeed, had he been summoned as trustee before the time when he has declared he had paid out to the creditors of Goodwin the whole amount of the note which was given for the consideration, we do not see how he could have discharged himself.† For he [* 142] manifestly took the property with a view to * delay and defeat some of the creditors, and to prevent them from recurring to their legal remedy by attachment. But he has stated on oath, that, before the writ in this suit was served upon him, all the funds which he had received from Goodwin had been exhausted by payments made by his orders to his creditors ; and that, of the demands and property assigned to him as security for his liabilities on the bonds, &c., the whole sum received, or likely to be received, was insufficient to indemnify him ; but that a considerable balance would still be due to him.
Under this declaration, he cannot be charged as a trustee of Goodwin, notwithstanding the original character of the negotiation between them. In this process, the condition of the parties at the time of the service of the writ must be looked to ; and, although previously to that time the person summoned as trustee may have received the property of the debtor under circumstances which would render him liable, yet, if he has since discharged himself of all trust by delivering back to the debtor the property received, in such manner that it may be attached by his creditors, or if he has paid the proceeds to bond fide creditors of the principal in satisfaction of their just de *127 mands, so that at the time of service of the writ he truly has nothing in his hands, he cannot be subjected to a judgment.
Sullivan and Simmons, for the plaintiff.
Prescott and Self ridge, for the trustee.
These observations apply to the sale of the merchandise in the store, the supposed trustee having positively and expressly declared under oath, that the whole sum of the note given by him for the amount had been paid to the use of Goodwin, before he was summoned as trustee.
With respect to the debts and property assigned to secure him on account of his engagements, he has in the same manner declared, that no balance remains after reimbursing himself for his actual and necessary advances ; and that, with respect to the vessel assigned to him, the expenses incurred in repairing her and fitting her for sea greatly exceeded the sum produced by the sale.
This part of the transaction seems originally to have been founded in good faith between the parties ; and probably * Whiting could have maintained his right against any [*143] creditor, notwithstanding the insolvent circumstances of Goodwin at the time of the assignment. For, our laws admitting of a preference of any favored creditors, and even authorizing by attachment the appropriation of all the property of a failing debtor tc the security or payment of any one bond fide creditor, there can be no doubt that an assignment of the whole or part of the effects of a debtor, honestly intended to give a pledge or security to a favored creditor, may be maintained.
We are obliged, therefore, on this disclosure, notwithstanding the peculiar hardship upon the summoning creditor, to discharge the supposed trustee.

Trustee discharged

 Burlingame vs. Bell, 16 Mass. Rep. 318. — Hastings vs. Baldwin, 17 Mass. Rep. 552.