Parker C. J.
delivered the opinion of the Court. This is a novel attempt by failing debtors so to appropriate their funds ' as to withdraw them from an attachment by the trustee process, and to enable them to exert a moral influence over their creditors to compel them to discharge their demands on receiving a small part of them. The object, as stated by the respondent, so far as it respected the distribution of their effects among their creditors, was commendable, but they also had in view their own personal advantage in being discharged from their debts ; and the means to effect this end was to place their funds out of the reach of process. If this can be legally done, there would be no occasion for bankrupt laws for the benefit of debtors, whatever may be required for the security of creditors-The debtor placing his property in the hands of an agent, puts it beyond the reach of law, and the creditors must submit entirely to his disposition of it, take such dividend as he shall prescribe, and discharge him from all claims, or lose the whole of their debts. The attachment law and trustee process would become wholly useless, and even assignments in the form now *445 practised would be discontinued. Great injustice, no doubt, often occurs in all the legalized modes of dealing with an insolvent debtor’s effects, but we apprehend, to sanction the plan adopted in this case would add another, and probably a more efficient engine, than any which now exists, to enable debtors to elude the claims of their creditors.
The whole effect of the transactions between the defendants and the respondent, is to place their funds in his hands subject to their disposal. There is no undertaking on the part of the respondent to pay out of the proceeds any of their debts. He engaged to pay to the order of Bertody, one of the debtors. This is virtually to pay him, and it rested entirely with him to appropriate the money to his own use, or to order it to be paid to his creditors, and to such creditors as he should choose to prefer, they having acquired no legal interest in the funds.
It is stated, and is no doubt true, that the design and object was, to distribute the funds equally among the creditors ; but there is no legal obligation so to dispose of them ; and if this can avail, there seems to be no reason why a debtor may not> without any machinery, declare himself insolvent, and bid defiance to all legal sequestration, if his purpose be to settle his own affairs and pay off his creditors to the extent of his property, if they will accept a dividend and release the whole. And it would seem necessarily to follow, if the creditors should refuse to accept his terms, he would retain the funds to his own use, unattachable, or consume them as his exigences might require. We think it was explicitly decided many years ago, in the case of Widgery v. Haskell et al., that an assignment to trustees, for the purpose of making a fair distribution of the effects of a debtor among his creditors, is void against creditors, where none are parties to the assignment. It may be good in favor of creditors who were parties, as has since been frequently determined ; but if there be any surplus, it remains attachable by the common writ or by the trustee process. In the case before us, not a single creditor was a party. It was a transaction between the debtors and their agent only, and although if he had paid out all the funds to bond fide creditors before the service of the writ, as in the case of Thomas v. Goodwin and Trs 12 Mass. R. 140, he would be discharged, *446 yet for whatever remained'in his hands at thé service of the writ, he would be answerable.
The respondent has claimed to be discharged, on the ground, that at the time of the service of the writ he had no goods, effects or credits of the principals in his hands; and he states three propositions as containing the whole scope of the trustee process, within neither of which, he alleges, has the plaintiff brought his case.
1. He had no attachable property in his hands, that is, nothing which could be attached, if exposed, by the ordinary process. This is true ; he held, in the first place, only choses in action, and after he had converted them into money, it could not have been attached, as it subsisted only in account between him and the principals.
2. The principals had no cause of action against him. This also is true ; for having accepted an order to pay the proceeds ' to the order of Bertody, he was not chargeable in a suit, until he had refused to pay according to such order, or had misapplied the funds.
3. That he did not owe the principals ; and this is true, for it does not appear by his answers, that he was accountable to them for what he should receive, otherwise than according to the agreement, and that agreement had not been violated.
But the case before us is not to be tested by either of these propositions ; these are all founded upon legal and valid transactions between the debtor and the person summoned as trustee, from which an obligation arises either to deliver property or to pay money, or perform some other duty to the principal for the breach of which the principal may have an action.
The present is a case of an invalid transfer of property, for a purpose not recognized by law, so that it is void against creditors. Upon the depositing of the demands in the hands of the respondent, he did not thereby become a trustee chargeable under the statute, for they were mere choses in action. Upon the receipt of the money he became chargeable, unless it had been before legally appropriated. There was no appropriation of it, except by an engagement to pay it over on the order of one of the principals. That is the same as if he was to pay it to the order of all the principals, it not befog shown that Ber *447 tody had any right to it more than the others, he being only the agent of the company. But if it be said that he was not answerable because he held promissory notes and not money, it is a sufficient answer, that on receipt of the money he became liable, and that his lending it and taking notes, without any special direction, left him the debtor of the principals. We consider the respondent standing in the same relation to the principals, and to the creditors, as if the demands had been placed in his hands to collect, without the arrangement entered into; because it is admitted by the answers, that that arrangement was made for the purpose of eluding the trustee process.[1]
The case of the Maine Fire & M Ins. Co. v. Weeks is relied upon to show that the principal must have a cause of action, in order to make the trustee chargeable.[2] That opinion has reference to the facts of that case, in which the position was undoubtedly true ; but cases have frequently occurred, where there was no present cause of action, and yet the trustee was held. And it is especially so in all cases of fraudulent transfers of property, or where goods, effects or moneys are deposited for the express purpose of saving them from attachment, which it is the great object of the trustee law to prevent.
It has been urged by the respondent, that the object and effect of this transaction are not different from those which are sustained in law in the form of assignments, which are in common practice in cases of insolvency. But there is a material difference. In assignments the debtor parts entirely with his property, and all control over it. It is not in his power to change the destination of the funds. He cannot in any event reclaim the property or the proceeds. The creditors are parties to the contract, and bind themselves to relinquish theit debts in most cases, or enter into some other covenants which form a consideration for the assignment. In the present case the funds are placed in the hands of the agent without any stipulation on his part to pay them over to creditors. He binds himself by the acceptance of an order, to pay to whomsoever one of the debtors shall direct. No creditor acquires by the contract any right to call on the agent for his debt or any part *448 of it. It is not pretended that any thing would have been paid t0 an> one wh° would not, for sixteen per cent, release his whole claim.
However honest, in this particular case, the views of the debtors may have been, and however just the motives of the respondent may have been, in being a party to the transac tion, we think it clear, that the effect of such a precedent, if established, would be, to enable failing debtors to lock up their effects so as to make them intangible by legal process, so that they may dispose of them at their will and pleasure, under a powerful temptation to appropriate a portion at least to their own use and benefit. And this is entirely contrary to our whole system of law in relation to debtor and creditor.

 See Wood v. Bodwell, 12 Pick. 2<iti ; Bernard v Graves, 16 Pick. 41,42

 See Morill v Brown, ’5 Pick. 176, 177.