FRANCIS B. CROWNINSHIELD vs. THEODORE KITTRIDGE.

Where one of the purposes of a mortgagor and mortgagee is to deter the mortgagor' creditors from attaching the mortgaged property, the mortgage is wholly void, as to those creditors, although the principal purpose of the parties is to secure a bonâ fide debt of the mortgagor.

Where a mortgage of personal property was made by A. to B., fraudulent and void as to A.'s creditors, to secure payment, in six months, of a debt of A., then due and paya ble to C., who had no knowledge of the mortgage when it was made, and B., before the six months elapsed, sold the property at auction and applied the proceeds of the sale to the payment of A.'s debt to C., and A. afterwards applied for the benefit of the insolvent act of 1838, c. 163, and his property was assigned under that act; it was *held* that his assignee could not recover of B. the proceeds of said mortgaged property.

ASSUMPSIT by the assignee of William W. Shaw, an insolvent debtor, to recover the value of certain household furniture mortgaged to the defendant by said Shaw, on the 14th of September 1839. The trial was in the court of common pleas, and the report thereof, by the judge who presided at the trial, was as follows :

It appeared that said Shaw applied for the benefit of the St. of 1838, c. 163, on the 12th of October 1839 ; that the plaintiff was duly chosen assignee of his estate ; that the defendant sold said mortgaged furniture at auction for $391·80 ; and that the condition of the mortgage of said furniture was, that said Shaw should pay to the defendant a promissory note of $600, given to him by said Shaw, payable in six months from said 14th of September 1839. But the following receipt was produced :   " September 16th 1839. Received of William W.

Shaw, his note for $600, it being secured by mortgage on fur-
niture, given in consideration of my giving my note to Mrs.
Maria Pickering for the same amount, to secure her for a note
holden against said Shaw. Theo. Kittridge."

No proof was offered that any note was given by the defend-
ant to Mrs. Pickering; but it was shown that said Shaw, at the
time, owed her $400, for which she held his note.

It was in contest between the parties, whether Shaw, at the
time of the execution of the mortgage, did or did not intend to
take the benefit of the insolvent act. And there was evidence
tending to show that the mortgage was made, as between Shaw
and the defendant, for $600 instead of $400, partly in order
that the excess of the amount, mentioned in the mortgage, over
the true sum due to Mrs. Pickering, might deter Shaw's cred-
itors from attaching the property mortgaged; but that Mrs.
Pickering was not a party to nor conusant of this arrangement,
she having done nothing more than to assent, after notice that
the conveyance had been made, and receive the money paid
to her by the defendant.

The defendant introduced evidence tending to show that the
mortgaged property was sold by him at auction, and that the
proceeds, $391·80, were paid over by him to Mrs. Pickering,
towards said debt of $400, and that this was done before any
application by Shaw for the benefit of the insolvent law ; and
he moved the judge to instruct the jury, that if they believed
said evidence, the plaintiff was not entitled to recover in this
action. But the judge refused so to do ; and instructed the jury,
that "if one of the purposes of Shaw and Kittridge in making the
note and mortgage, and the obligation of Kittridge, for $600,
instead of the true amount of Shaw's debt to Mrs. Pickering,
was to hinder and deter the creditors of Shaw from attaching
the property, then the mortgage was fraudulent in law, and
void as against plaintiffs, notwithstanding another and the
principal purpose of both parties was, to provide for or secure
the payment of a just debt due to Mrs. Pickering, as aforesaid ;
and that if the mortgage was found by the jury to be void, on
the ground before stated, the defendant was not discharged.

Crowninshield v. Kittridge.

from his liability by payment of the proceeds of the mortgage to Mrs. Pickering, or to Shaw for her benefit, in pursuance and execution of the contract; but if the parties rescinded the contract, and the defendant thereupon paid the proceeds to Shaw for his own use, before notice of any proceedings by Shaw under the insolvent act, then the defendant was discharged from any liability in this su't." .

The jury found a verdict for the plaintiff, and the defendant alleged exceptions to the foregoing instructions.

*Welch*, for the defendant.

*Bartlett & Crowninshield*, for the plaintiff

HUBBARD, J. From the facts stated, we have no doubt that the mortgage was fraudulent as to creditors. It appears to have been made with the double purpose of securing, through the defendant, a *bonâ fide* debt due from the mortgagor to a Mrs. Pickering, and of preventing creditors from attaching the property. Such a purpose taints the conveyance, (2 Pick. 137, 138,) and if the goods had been in the hands of the defendant at the time of commencing the action, there is no question but what it could have been successfully maintained. As between the parties the transfer was valid, but it might be avoided by creditors. Prior, however, to the present suit, the defendant had converted the goods into money, by a sale to *bonâ fide* purchasers, and had paid the amount to Mrs. Pickering, a *bonâ fide* creditor; the proceeds not exceeding her demand.

The learned judge who tried the case, after stating the principles of the law respecting conveyances fraudulent as against creditors, further instructed the jury that " if the mortgage was found by the jury to be void on the ground before stated," that is, of being fraudulent as to creditors, " the defendant was not discharged from his liability by payment of the proceeds of the mortgage to Mrs. Pickering, or to Shaw for her benefit, in pursuance and execution of the contract; but if the parties rescinded the contract, and the defendant thereupon paid the proceeds to Shaw for his own use, before notice of any proceedings by Shaw under the insolvent act, then the defendant was discharged from any liability in this suit." It is also argued by

the counsel for the plaintiff, that though the defendant paid Mrs. Pickering out of the proceeds of the mortgaged property, she had no interest or property in the goods, and that it was his own debt he was paying to her; that it was no part of the original agreement, that he should pay her out of this particular fund; and that, as he used the mortgaged property as his own, selling it before the time when the mortgaged note fell due, he is accountable for the proceeds in this action.

But we cannot concur in these conclusions. If Mrs. Pickering had been knowing to the fraudulent agreement, and consenting to it, a payment to her would not have purged the fraud, or have discharged the defendant. But she was an innocent party and a *bonâ fide* creditor, who might herself, if there had been no assignee of the estate of Shaw, have defeated the conveyance by an attachment of the goods to secure her own debt. A payment to her cannot then be held void as against creditors, she being herself a creditor, and standing in the same situation as a purchaser without notice. It does not, in our judgment, affect the case, that the defendant had given, or agreed to give, his note to Mrs. Pickering; for it is evident from the facts, that it was not received by her, if received at all, in payment of the debt due to her from Shaw, and the sum actually paid to her was the proceeds of the goods, and was in discharge of the debt of Shaw.

We cannot distinguish this case in principle from those of *Thomas* v. *Goodwin,* 12 Mass. 140, and *Hutchins* v. *Sprague,* 4 N. Hamp. 469. In those cases, the conveyances to the respective trustees of the several defendants were fraudulent as against creditors; yet the trustees, having paid the proceeds of the goods assigned to them to *bonâ fide* creditors of the principal debtor, were discharged, on the ground that there remained nothing in their hands that could be subjected to a judgment. In the case of *Hutchins* v. *Sprague,* the court say, " however fraudulent the contract, under which the goods went into the hands of the trustee, might have been, if, before the service of the process, he had repented of the fraudulent purpose and restored the goods to the principal, it is clear he would have

been entitled to be discharged in this case. And we see no reason why a *bonâ fide* payment of debts, due from the principal, to the full value of the goods, or even an actual and *bonâ fide* assuming to pay such debts to that value, should not be deemed equivalent, in this case, to a restoration of the goods." And we are of opinion that the payment of the debt to a *bonâ fide* creditor of the mortgagor, without notice, from the proceeds of the mortgaged goods, was equivalent to a rescinding of the contract and a restoration of the goods, or their proceeds, to Shaw for his own use ; and that the previous agreement of the defendant with Shaw does not furnish a legal cause for charging him in this action. And with this agrees the decision in the case of *Oriental Bank* v. *Haskins*, 3 Met. 332.

It has been attempted by the counsel to distinguish *Thomas* v. *Goodwin* and *Hutchins* v. *Sprague* from the case at bar, on the ground that they were suits against trustees, and turned on the state of facts as they existed at the time of the service of the writs. It is true that the cases did thus turn ; but the same is true in the present case. As the trustees in those actions had no goods or effects of the principal in their hands, at the time of the service on them, so here the defendant had neither goods nor money, the property of the insolvent, in his hands at the commencement of the suit ; the payment to a *bonâ fide* creditor having discharged him from liability to other creditors. And if, instead of a suit under the insolvent act, no process had issued against the insolvent, and a creditor had sued him, and summoned the defendant as his trustee, and the facts as they now appear had been stated in his answer, he would, under the authority of the cases cited, have been entitled to be discharged The fact, that the plaintiff is an assignee under the insolvent act, and not a creditor of Shaw, does not vary the matter. He has no greater rights in this case than a creditor would have had, if there had been no process under the statute.

*Verdict set aside, and a new trial ordered at the bar of this court.*