## Bowen and McNamee *v.* Mead and Mead.

One Cram was indebted to the plaintiffs, who instructed their agent to call on him for payment or security. The plaintiffs' agent called on Cram, and he not having the money to pay the plaintiffs, made a joint and several promissory note for $408, payable forty days after date, to the plaintiffs or bearer, signed his own name thereto, and the copartnership names of W. W. Cram & Co. and Wilcox & Co., of which firms he was a member, and he and the plaintiffs' agent then went to the defendants, S. P. and W. W. Mead & Co., who signed the name of their firm to the note' at the request of Cram, when the note was delivered by Cram to the plaintiffs' agent. Neither S. P. and W. W. Mead & Co. nor the plaintiffs' agent were informed or knew that Cram had signed the names of W. W. Cram & Co. and Wilcox & Co., without authority from his copartners, which was the fact. *Held,* the defendants were liable to plaintiffs on their · promise.

CASE reserved from Wayne Circuit Court. One Jessee Cram was indebted to plaintiffs, who sent their clerk to Cram's store to collect or secure the debt. The clerk called at Cram's place of business, and urged him for payment or security. Cram could not pay, but offered to give his note with sureties for the amount, payable in forty days, which the plaintiffs' clerk agreed to accept. Cram stepped out and wrote a joint and several note, payable to the plaintiffs or bearer, in forty days, for $408, the amount due to them, signed his own name to it and the copartnership names of W. W. Cram & Co. and Wilcox & Co.,

Bowen *et al. v.* Mead *et al.*

and with it so signed, he and the plaintiffs' clerk went to the place of business of the defendants, S. P. & W. W. Mead & Co., who, at the request of Cram, signed the name of their firm, when the note was delivered by Cram to the plaintiffs' clerk. Cram was a partner of the firms of W. W. Cram & Co. and Wilcox & Co., and signed their names to the note without authority from his copartners; but of this neither S. P. & W. W. Mead & Co. nor the plaintiffs' clerk had any notice at the time the note was signed by S. P. & W. W. Mead & Co., and delivered by Cram to the plaintiffs' agent.

*Lothrop and Duffield*, for the plaintiffs.

*Joy and Porter*, for the defendants.

*By the court*, WHIPPLE, C. J. Before proceeding to consider the objections urged by the defendants against the right of the plaintiffs to recover, it may be well to state the legal relations existing between the plaintiffs and defendants, the defendants and Cram, and the defendants and the other parties whose names appear upon the note, at the time the same was delivered to the plaintiffs. In respect to the payees (the plaintiffs), the law regards the defendants as occupying the relation of joint and several promissors; as between the defendants and Cram, the former stood in the light of sureties of the latter; and the legal relation of Cram & Co., Wilcox & Co., and Mead & Co. to each other, was that of co-sureties of Cram, for whose individual debt the note was given.

The plaintiffs, then, might, under the facts in the case, well consider all and each of the parties who signed the note as mere sureties, as bound to them in the same manner and to the same extent as Cram, the principal debtor. Their undertaking upon the face of the note was not collateral, but absolute—it was an unconditional promise to pay the note according to its tenor.

The legal rights of the parties would not be changed, if, instead of executing one note, the makers had executed four several notes, each binding himself to pay to the plaintiffs the sum specified in the note upon which this suit is brought. The right of the plaintiffs to sue one or all of the parties upon their several liabilities, would not have been more complete than is their right to sue each separately upon the note in ques-

tion. If several judgments were recovered, the satisfaction of one would operate as a satisfaction of all; and there would spring up new rights, as between the surety who satisfied the judgment and his principal, and between such surety and his co-sureties. The obligation on the part of the principal would be to indemnify the surety to the full extent of the loss he may have sustained; and the obligation on the part of the co-sureties would be to contribute their just proportion towards making up such loss.

These general remarks would equally apply, had the sureties of Cram thought proper, when they executed the note, to have severally added to their signatures the word "surety." While such addition would have indicated on the face of the note that they stood in the relation of sureties to Cram, it would not have changed the legal nature of their liability to the payees—the law would still consider them each as principals. Having placed themselves in the situation of principals, by expressly declaring upon their contract that they bind themselves as such, they must necessarily be held to the character they have thus voluntrily assumed. That character they have no right to disclaim, and there is no hardship in holding them to it.

But the principal ground of defense, is, that the plaintiffs are seeking to enforce an obligation the defendants never entered into: that at the time they executed the note, they supposed that the responsibility they were incurring would be shared by others. But the nature and extent of the defendants' liability must be determined by what appears on the face of the note, and not by any erroneous opinion they may have formed at the time of its execution. Does the circumstance, then, that Cram & Co. and Wilcox & Co. have successfully resisted the enforcement of the contract as against them, release the defendants from its obligation? I am unable to perceive how such a conclusion can result from such premises. That the defendants may not be able to enforce contributions as against persons who with them stood in the relation of sureties for Cram, is no reason for annulling the contract into which they entered with the plaintiffs.

The right of the plaintiffs to recover upon their *express* promise, is not dependent upon the right of the defendants to recover against their co-sureties upon the *implied* promise, that they would share equally any loss that might accrue in consequence of their joint and several un-

dertaking as sureties of Cram. If the converse of this proposition were true, it would convert a liability, which by the terms of the contract is absolute, into a contingent or conditional liability. That the *liability of the defendants was absolute,* I have already shown: they promised to pay to the plaintiffs $408, forty days after the date of the note—*not* that they would pay that sum *in the event* that Cram & Co. and Wilcox & Co. were also liable. The written agreement imports no such conditional promise; and the law annexes no such condition under the facts disclosed in this case.

It is further insisted, that the agent of the plaintiffs took the note, chargeable with notice, that a fraud had been practiced upon the defendants. If the facts warranted the presumption that the plaintiffs were seeking to reap the fruits of their own dishonesty, through the aid of this court, the case would be a clear one for the defendants. But I am unable to discover any ground upon which such a charge can rest. The agent of the plaintiffs knew that the note was given for the individual debt of Cram; it is also quite probable that he discovered, when the note was *delivered* to him, that the names of the two firms of Cram and Co. and Wilcox and Co. had been placed there by Jesse Cram.

What passed between Cram and Mead and Co., when the latter were solicited to execute the note, does not appear. Enough, however, appears on the face of the instrument to have admonished Mead and Co. that the note was probably given for the individual debt of Jesse Cram. If not, why should his signature appear, binding himself individually, and as a member of both firms?

If the note had been given for a debt of either firm, Jesse Cram would have been as effectually bound, by adding the signatures of these firms, as by affixing his own signature. Again: when the note was presented to Mead and Co. for their signature, the names of the other makers were affixed to it; and they had the same opportunity of knowing that each of those signatures were in the hand writing of Jesse Cram, as had the agent of the plaintiffs. The means of information upon both the facts just adverted to, were as accessible to Mead and Co. as to the plaintiffs. The former were as much interested to inquire into the authority of Cram to execute the note in the name of the firms of which he was a member, as were the plaintiffs. If the authority

did not exist, then Mead and Co. could not, as against these firms, enforce contribution; and the plaintiffs, for a like reason, would lose the benefit of the security which they supposed they had obtained.

This circumstance would, in the absence of other proof to the contrary, repel the presumption that any fraud was meditated by the plaintiffs. They are no more responsible to Mead and Co. for any excess of authority on the part of Jesse Cram, than they would be for the solvency of their co-sureties, had there been no excess of authority, and their liability to contribute had been established by a judgment at law.

It was the duty of Mead and Co., before giving credit and character to a note which was to pass into the hands of a third party, 'to ascertain, if they desired so to do, whether Jesse Cram had exceeded his powers as a member of the firms of Cram and Co. and Wilcox and Co. Not having done so, they cannot now, in law or justice, be permitted to shield themselves from a responsibility voluntarily incurred, by insisting that a fact, of which they had no knowledge, should have been communicated by the plaintiffs, who, for aught that appears, never saw the note until its execution by the defendants. The wrong, whether intentional or not, growing out of the illegal act of Jesse Cram, ought not to be visited upon the plaintiffs, to whom no fraud or other misconduct in the transaction can be fairly imputed.

We have been referred to Leaf *et al. v.* Gibbs, 19 Eng. C. L. Rep. 475, as an authority to show, that, under the facts in this case, the plaintiffs are not entitled to recover. I have examined that case, and am unable to trace any analogy between it and the one before us. It is there held, that if a person signs a promissory note, on a representation that others are to join, and one afterwards refuses to sign, the payees cannot recover in an action on the note against the person who signed it, unless such person, knowing the facts, and being aware of his rights, had consented to waive his objections.

The distinction between the two cases may be gathered from the charge of Ch. Justice Tindal to the jury. He said, that " from the evidence of the plaintiffs' witnesses, that the defendant was told that his mother was to join, and therefore the obtaining of her signature was a condition, which, if not carried into execution, would justify the defendant in withdrawing." Until the signature of the mother was obtained to the note, there was in law no delivery, and the attempt to enforce

its payment was a fraud upon the defendant, who was told that his responsibility was to be shared by another.

In the case of Duncan *v.* The United States, 7 Peters 435, the fact was, that a bond was drawn in the names of Abner L. Duncan, John Carson, and Thomas Duncan, as sureties for William Carson, but Thomas Duncan never signed it.

In behalf of the plaintiff in error it was contended, that the body of the bond proved that Thomas Duncan was, by the contract, to share its responsibility with Abner Duncan, and without the signature of Thomas Duncan it was never delivered, but remained an escrow. To support this proposition, reference was had to the following cases: Wells *v.* Dill, 1 Martin's R. 592, and to Leaf *v.* Gibbs, 19 Eng. C. L. Rep. 475.

The Supreme Court of the U. S. sustain the opinion of the Supreme Court of Louisiana in the case of Wells *v.* Dill, in which it is said that as the bond upon which suit was brought, was drawn in the name of one Blanchard as principal, and the defendant, Dill, and one Walter Turnbull, as sureties, and the signatures of Blanchard and Dill only are affixed, that Dill's signature to the obligation did not bind him.

But it is to be remarked, that this ruling was in conformity to the civil law, which declares the contract incomplete until all the parties contemplated to join in its execution, affix their names to the bond.

" The law (say the Supreme Court of Louisiana) presumes that the party signing did so *upon the condition* that the obligors named in the instrument should sign it." Mr. Justice McLean adds, in reference to this decision, that " There can be no doubt, that under the civil law, the principle is correctly stated by the court."

The doctrine of the common law is said by the same judge to be too well settled to be controverted: that where an instrument is delivered as an *escrow*, or where one surety has signed it on condition that it shall be signed by another before its delivery, no obligation is incurred until the condition shall happen. The acknowledgment (continues Justice McLean) of the bond by Abner L. Duncan, and afterwards by John Carson, unconditionally, and its delivery to the government, would seem to rebut the inference drawn by the plaintiffs against its validity, from the simple fact of its not having been signed by Thomas Duncan. This case, then, instead of supporting the views of the defendants, is an authority against them.

In support of the views we have expressed, reference may be had to the case of Stewart v. Boehm, adm. of Jacob Swan, 2 Watts' R. 356. The action was upon a joint and several note, under seal, signed by Ringle and Dasher, who were principals, and Jacob Swan, who was a surety. As a defence, it was insisted by the administrators of Swan, that as Dasher signed and sealed the note in the name of the firm of Ringle and Dasher, without authority, that Ringle was not bound as it was the intention of the parties he should be, and that, therefore, a recovery could not be had against the surety. In answer to this defence, the court say, " where the obligee has acted with good faith, what has he to do with the mistakes or misconceptions of the obligor?" In the case of Cutter v. Whittemore, 10 Mass. 450, it was held that a bond written as if to be executed by three, as joint and several obligors, although executed by two, is nevertheless a valid bond. See, also, Adams v. Bean, 12 Mass. 140.

Upon the whole, I am of the opinion, that upon the facts of this case the plaintiffs are entitled to judgment, and it must be so certified.

*Certified accordingly.*