Cyrus Thompson et al. *vs.* Frank L. Shaw.

Washington.    Opinion March 12, 1908.

*Common Law Assignment.  Power, Authority and Duty of Assignee.  Assenting and
Non-Assenting Creditors.    Trustee Process.   Liability of Assignee in Trustee
Process.   Fraud.   Exceptions in Scire Facias.   Authority of Law
Court.   Revised Statutes, chapter 88, sections 63, 79.*

When an assignor makes a common law assignment of all his property, not
    exempt from attachment and execution, for the benefit of such of his
    creditors as may, after notice of the assignment, assent thereto, and a
    reasonable time is provided in the assignment for such assent, and the
    assignee accepts the trust, then such assignment, if bona fide, is lawful,
    and until assailed by some one claiming rights against it under the pro-
    visions of the United States Bankruptcy Law it stands as a valid transfer
    of the property described as conveyed therein.

When a common law assignment for the benefit of creditors assenting thereto
.   has been lawfully made and creditors have been notified of such assign-
    ment, any creditor may assent to the assignment and secure a pro rata
    part of the property with the other assenting creditors, or may attack the
    assignment through bankruptcy proceedings against the assignor, or may
    attach by trustee process the property in the hands of the assignee and
    thereby secure so much thereof as would not be needed to satisfy the debts
    of previously assenting creditors.

When an assignee accepts an assignment lawfully made to him by an assignor
    for the benefit of such of the assignor's creditors as may assent thereto, he
    thereby assumes the duty towards assenting creditors to administer the
    trust according to its provisions.   But as to non-assenting creditors he owes
    no such duty, and they cannot legally complain if he gives up the trust and
    returns the property to the assignor, unless he does it with the intent and
    purpose thereby to defraud such non-assenting creditors.

When a common law assignment has been lawfully made and creditors have
    been seasonably notified of the assignment and have an opportunity to
    assent thereto, then no special duty rests on either the assignor or the
    assignee to secure such assent.

When a common law assignment has been lawfully made, the assignee has a
    right to employ counsel and when the assignment so provides, he may
    lawfully pay out of the trust funds in his hands all reasonable and neces-
    sary counsel fees.

When a common law assignment has been lawfully made and a non-assenting creditor by trustee process attaches the property in the assignee's hands, such assignee will not be held chargeable for sums paid by him, prior to the service of the writ, to the bona fide creditors of the assignor in settlement of their just demands.

When a common law assignment has been lawfully made and a non-assenting creditor by trustee process attaches the property in the assignee's hands, such assignee will not be held chargeable for property returned by him to the assignor prior to the service of the writ, unless he returned it with the intent and purpose to defraud non-assenting creditors.

An intent to defraud creditors, especially such creditors as have not assented to the provisions of a common law assignment for their benefit, is not to be inferred from successful efforts to compromise the claims of creditors after such assignment has been made.

When the bill of exceptions in an action of scire facias founded upon an original trustee process, indicates that the whole case is to be considered by the Law Court, the exceptions need not specify the extent to which the Law Court may examine the case.

Revised Statutes, chapter 88, section 79, providing that "whenever exceptions are taken to the ruling and decision of a single justice as to the liability of a trustee, the whole case may be re-examined and determined by the Law Court, and remanded for further disclosure or other proceedings, as justice requires," applies alike to scire facias and original proceedings in trustee process, and when exceptions are taken in an action of scire facias founded upon an original trustee process and the exceptions indicate that the whole case is to be considered, the Law Court has authority to correct any error in the judgment rendered by the court below whether of law or of fact.

In the case at bar, *Held:* That the common law assignment to the defendant was not fraudulent and that prior to the service of the original trustee writ upon him, he had lawfully discharged himself of all the property received by him from the assignor except $182.66 and for that sum only the plaintiffs should have judgment.

On exceptions by defendant. Sustained.

Scire facias founded upon an original trustee process brought by the plaintiffs against one Minnie A. Dyer as principal defendant and Frank L. Shaw, trustee. The question of the trustee's liability upon his attempted disclosures in the original suit was before the Law Court in *Thompson et al.* v. *Dyer*, 100 Maine, 421, in which he was charged generally as trustee. In the scire facias proceedings the defendant was allowed to disclose anew. See Revised Statutes, chapter 88, section 72.

The common law assignment referred to in the opinion, is as follows :

"Know all men by these presents, that I, Minnie A. Dyer of Millbridge, in the County of Washington and State of Maine, doing business under the firm name of Dyer's Grocery, as party of the first part, in consideration of one dollar paid by Frank L. Shaw of Machias in said county, party of the second part, and of the trust herein expressed, do grant and assign to the said party of the second part all my property, estate, rights and credits of every description, both individual property and property of said firm of Dyer's Grocery, except such as is by law exempt from attachment and execution, to have and to hold the same to the said Frank L. Shaw in trust to sell and dispose of the said property to the best advantage, and collect and convert into money said debts and demands, and to proceed with said property according to law, and make a proportional distribution of the net proceeds thereof among such creditors of said party of the first part as shall become parties to this assignment, as parties of the third part, within sixty days of the date hereof, and after the payments above mentioned, and hereinafter stated and made to pay the surplus to the party of the first part.

"And it is further agreed that the said trustee shall, out of the trust estate, pay all the costs and expenses of carrying out the trust herein declared, including a reasonable compensation for the trustee herein named, and for the services of an attorney when such services become necessary, and to pay all claims entitled to priority under the insolvent laws of Maine, in so far as such laws are not repugnant to or have not been superseded by, the bankrupt laws of the United States.

"And said Frank L. Shaw agrees to accept said trust and execute the same according to the provisions of this instrument and agreeably to law. And the creditors, whose names are hereunto subscribed, agree to said assignment, and to receive their proportional part of said property in full of all their claims against said party of the first part, and upon payment thereof to relieve and forever discharge said party of the first part from their respective claims. To

the covenants and agreements hereof the respective parties bind themselves and their legal representatives.

"In testimony whereof, we the said parties of the first, second and third parts, hereunto set our hands and seals on the sixth day of October, A. D. 1899, the said parties of the third part adopting and using one common seal. The signature of any duplicate copy hereof of the same tenor to be of like effect as if signed hereto.

<div align="right">

"Minnie A. Dyer, (seal)

"Frank L. Shaw, (seal)"

</div>

This assignment was duly acknowledged by Minnie A. Dyer before Joseph W. Leathers, a justice of the peace.

Heard at the April term, 1907, Supreme Judicial Court, Washington County. After hearing, the presiding Justice rendered judgment against the defendant trustee for the amount of the plaintiff's judgment against Minnie A. Dyer, the principal defendant in the original suit, to wit, $404.57 and costs, and thereupon the defendant trustee excepted.

The case appears in the opinion.

*Howard R. Ives*, for plaintiffs.

*William R. Pattangall*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, JJ.

KING, J. This is an action of scire facias founded upon an original trustee process brought by the plaintiffs against Minnie A. Dyer as principal defendant and Frank L. Shaw, trustee.

The facts and circumstances leading up to these proceedings in scire facias, as shown by the record, briefly stated, are as follows:

Prior to Oct. 6, 1899, Minnie A. Dyer, of Milbridge, Maine, owning a store and stock of merchandise, was carrying on business under the immediate management of her husband. Domestic difficulties resulted in a separation. Investigation revealed to her that her liabilities exceeded her assets.

An attachment against her property was made, and other suits and attachments were threatened.

In this situation, after conference with her attorneys, Messrs. Pattangall & Leathers, she made, on the sixth day of October, 1899, a written assignment of all her attachable property to the defendant for the benefit of such of her creditors as should assent thereto within sixty days.    This assignment Mr. Shaw accepted and signed.    The defendant left the detailed management and disposition of the property so assigned to him, and the settlement with Mrs. Dyer's creditors, to Messrs. Pattangall & Leathers, with whom however, he frequently consulted and fully approved and adopted what his attorneys did in the premises.    The plaintiffs were seasonably notified of the assignment but did not assent thereto.

None of the creditors appear to have formally assented to the assignment.    The property was converted into money amounting to $3780.    An effort was made to effect a settlement with the creditors on a percentage basis, and all claims, except that of the plaintiffs, appear to have been settled either by compromise or as the result of prior suits.

On Feb. 9, 1900, the plaintiffs served their original trustee process upon the defendant as trustee of Minnie A. Dyer.    The principal defendant was duly defaulted.    The question of the trustee's liability upon his attempted disclosures in that original suit was before this court in *Thompson* v. *Dyer*, 100 Maine, 421, in which he was charged generally as trustee.

It was there held that a statement of information received from his attorneys as to their doings in connection with the property assigned could not properly be considered as facts disclosed by him, because he had not adopted such statement as his own on oath in his disclosure and that the deposition of his attorney was not admissible because the facts sought to be proved by the deposition had not been alleged as required by statute.    The court said: "The result is that upon the disclosure to which we are confined Mr. Shaw must be charged generally as trustee.    If in fact he had no goods, effects or credits of Mrs. Dyer in his hands either actually or constructively at the date of the service of the writ upon him, he has not yet shown it by legal evidence adduced in the manner provided by law.    He has not yet stated discharging facts in his

disclosure, nor has he yet opened any door for the statements of other persons.

"Upon scire facias he will undoubtedly have the opportunity to make as full and clear and detailed a disclosure as may be required, or as he may desire, and to make the statements of Mr. Pattangall a part of that disclosure, or to open a door for their admission otherwise."

In answer to these scire facias proceedings the defendant has made a full disclosure under oath in which he states the amount of money received from the property assigned to him and specifies in detail to whom and in what amounts it has been disbursed. Although his disclosure reveals that he relied upon information furnished him by his attorneys as to many of the details and facts disclosed by him, yet he states on oath his belief in the truth of that information, adopts it as his own, and declares those details and facts to be true.

He has now, we think, properly disclosed those facts as to the disbursement of the funds received by him as assignee which the court could not consider in his former disclosure.

At the April term, 1907, after hearing upon this disclosure, the presiding Justice rendered judgment against the trustee for the amount of the plaintiffs' judgment against the principal defendant, $404.57, and costs. The case is before this court on exceptions to that judgment.

The plaintiffs in support of the judgment below, claim that the assignment was fraudulent and void as to the assignor's creditors, and that under the provisions of R. S., chap. 88, sec. 63, the trustee is chargeable with the full amount of their judgment against the principal defendant.

Nothing appears in the assignment to indicate fraud. It is in the usual form of a common law assignment for the benefit of creditors. By it all the assignor's property not exempt from attachment and execution, was conveyed to be divided pro rata among all of her creditors who should assent thereto, and reasonable time for such assent was provided for. Such an assignment, if bona fide, is lawful. It is not contra bonos mores. Until assailed by some

one claiming rights against it under the provisions of the bankruptcy law it stands as a valid transfer of the property described as conveyed therein. *Pleasant Hill Cemetery* v. *Davis*, 76 Maine, 289.

But the plaintiffs contend that this assignment was not made bona fide, that the assignor intended thereby to place her property beyond the reach of her creditors for her advantage ; and that such fraudulent intent is discovered from the circumstances out of which the assignment proceeded and the subsequent conduct of the assignor and assignee in relation to the property assigned.

They urge, in argument, as acts showing a want of good faith in the assignment, that the assignee did not devote his personal attention to the performance of all the duties imposed upon him by the assignment, but permitted his attorneys, who were acting also for the assignor, to attend chiefly to the details of the business ; that no effort was made to secure the assent of the creditors to the assignment, but instead a compromise settlement was solicited ; that some of the money received from the property was turned back to Mrs. Dyer ; and that the attorneys were allowed by the assignee too liberal compensation for their services.

This position of the plaintiffs that the record here shows that the assignment was made with a fraudulent intent is untenable, we think. The situation and conduct of the assignor at the time it was made, and the provisions of the assignment itself, refute and disprove it. Mrs. Dyer was insolvent, creditors were attaching, she could not pay them, and in this extremity she placed all of her property in the hands of a trustee for the benefit of all of her creditors without favor or preference, reserving nothing for herself even for her immediate necessities. Her act did not put the property beyond the reach of her creditors. It was still subject to attachment by trustee process in the hands of the assignee by any non-assenting creditor, who would by such attachment reach all of such property then held by the trustee, and not needed to satisfy the debts of any previously assenting creditors.

Neither do we perceive in the subsequent conduct of the parties, as suggested by the plaintiffs, any substantial proof of an original fraudulent intent, or actuating motive, to hinder, delay or defraud

creditors.    The assignee had a right to employ others to assist him in the execution of the trust, for whose acts, however, he became in law fully responsible.    If the creditors were seasonably notified of the assignment and had an opportunity to assent thereto, and it appears that the plaintiffs were so notified, then no special duty rested on either the assignor or assignee to secure such assent.

An intent to defraud creditors, especially such creditors as have not assented to the provisions of a common law assignment for their benefit, is not to be inferred, we think, from successful efforts to compromise the creditors' claims after such assignment is made.

We find, therefore, nothing in the assignment itself or in the situation or conduct of the parties thereto, to justify the plaintiffs' claim that the assignment was fraudulent and void as to the assignor's creditors.

When notified of the assignment the plaintiffs might have assented thereto and secured a pro rata part of the property with other assenting creditors; or, they might have attacked the assignment through bankruptcy proceedings against the assignor; or, lastly, they might have attached by trustee process the property in the hands of the assignee and thereby secured so much thereof as would not be needed to satisfy the debts of previously assenting creditors, if any.    They did nothing, however, for four months, and then summoned the assignee as trustee of the assignor.    The rights of the parties in this trustee process must be determined by the conditions as they existed at the time of the service of the writ, Feb. 9th, 1900.    *Pleasant Hill Cemetery* v. *Davis*, supra.

The plaintiffs did not assent to the assignment, and, therefore, the defendant owed no contractual duty to them as such assignee.

If, prior to the service of their writ upon him, he had discharged himself of the trust by delivering back to the debtor in good faith the property received, or by paying the proceeds thereof to her bona fide creditors in settlement of their just demands, then the plaintiffs would have no legal cause to complain of his acts.    *Thomas* v. *Goodwin & Trustees*, 12 Mass. 140.

An examination of the disclosure and other evidence in the record shows that prior to Feb. 9, 1900, the date of plaintiffs'

attachment, the defendant had paid, from the $3780, received from the property that Minnie A. Dyer assigned to him, by her orders, to her bona fide creditors and to herself $3381.51 leaving an actual cash balance in his hands of $398.48.  But there had been a prior trustee process served upon him in favor of Swift et als., creditors of the assignor, in which prior proceedings he was finally adjudged trustee for $215.83, and which judgment was afterwards paid by him from the $398.49, leaving but $182.66 attachable in his hands Feb. 9, 1900.

It is unnecessary to consider here the fact that after the service of the plaintiffs' attachment the defendant also paid $420 to S. W. Thaxter & Co., previous attaching creditors, because the defendant now admits that he must personally lose the benefit of that payment, the same having been made without the statutory demand upon execution necessary to fix his liability therefor as against a subsequent attaching creditor.

The plaintiffs suggest that it does not sufficiently appear that the defendant's liability, as trustee in the suit of Swift et als., was legally fixed so as to afford him the benefit of that payment.

From the whole disclosure, and all the evidence in the record, we think it does appear that the payment to Swift et als. was made because the defendant was legally required so to do.  The plaintiffs do not deny this in their allegations.

It appears that he paid it after a contest and hearing in court.

In answer to a question whether that payment was made "to protect you from liability" he answered "yes."

Again, the plaintiffs contend that the defendant is chargeable for the amounts paid back to Mrs. Dyer.  This contention would prevail if the plaintiffs had become parties to the assignment.

An assignee, accepting such an assignment, assumes the duty towards assenting creditors to administer the trust according to its provisions.  But as to non-assenting creditors he owes no such duty. They can not legally complain if he gives up the trust and returns the property to the assignor, unless he does it with the intent and purpose thereby to defraud such non-assenting creditors.  The plaintiffs here did not become parties to this assignment.  They are not

in a position to complain because the assignee, prior to their attachment, permitted Mrs. Dyer to use some of the property assigned to him, unless that was done by him to defraud them. The record does not disclose any such intent to defraud. Mrs. Dyer turned over to the assignee all of her property not attachable. She was without any means of support. Domestic difficulties resulted in divorce proceedings by her against her husband. The assignee permitted her to have from time to time for her support and expenses money from the property she had turned over to him, amounting in all to $550. We do not think he is chargeable for that sum in this subsequent trustee process by non-assenting creditors.

Still again the plaintiffs contend that the counsel fees paid by the assignee should not be considered a proper disbursement. This contention is not maintainable. The assignee had a right to employ the services of counsel. The property was attached before it was assigned. Other suits were brought in which the assignee was summoned as trustee. The husband's rights in the property were an incumbrance upon it to be removed in some way.

It, therefore, does not appear unreasonable that defendant did employ counsel. The assignment provided for the payment of necessary counsel fees. It appears that the counsel employed performed substantially all the detailed business connected with the settlement of the affairs, looked after all the litigation which has followed, and that the assignee charged nothing for his services. In view of all this it can not be said that the amount paid for these services is excessive, or that its payment by the assignee indicates an intent to defraud the plaintiffs.

Lastly, the plaintiffs question the authority of this court, under the exceptions, to pass upon the correctness of the judgment below because the bill of exceptions does not indicate whether the decision was erroneous in fact or in law.

The exceptions in the case at bar provide that the "writ, evidence including admissions made at said hearing, and decree of the presiding Justice, are to be annexed hereto and made a part of the bill of exceptions," thus indicating that the whole case was to be considered by the Law Court. But the exceptions need not specify the

extent to which the Law Court may examine the case.　Chapter 88, sect. 79, R. S., provides: "Whenever exceptions are taken to the ruling and decision of a single justice as to the liability of a trustee, the whole case may be re-examined and determined by the law court, and remanded for further disclosure or other proceedings, as justice requires." This statute applies alike to scire facias and original proceedings in trustee process. *Brainard* v. *Shannon*, 60 Maine, 342, was an action of scire facias. Under the exceptions this court has authority, we think, to correct any error in the judgment below whether of law or of fact.

Our conclusion is that the defendant has shown by his disclosure that, prior to Feb. 9, 1900, the date of the service upon him of the plaintiffs' orignal trustee writ, he had lawfully discharged himself of all the property received by him from Minnie A. Dyer except the sum of $182.66, and for that sum only the plaintiffs should have judgment.

Accordingly the entry should be,

<div style="text-align:right">

*Exceptions sustained.　Judgment for plaintiffs*
*for $182.66.*