HALL & TOWNSLEY *v.* JOSEPH H. DENISON, and EDWARD R. CAMPBELL, Trustee.

A general assignment, by a debtor, of all his property, for the benefit of all his creditors, executed prior to the enactment of the statute of 1843,—Acts of 1843, p. 7,—is valid, and must be sustained, under the decisions made in this state.

The assent of the creditors to such an assignment will be presumed, although they do not in any way become parties to it, or give any express assent.

And such an assignment is not rendered invalid, nor the presumption of assent of the creditors affected, by its containing a clause giving a preference

Hall et al. *v.* Denison & Tr.

to such creditors as shall, within ninety days, release their claims against the debtor by becoming parties to the assignment,—which contains a clause of release,—if the assignment also contain a general clause, providing for the division of all the property, remaining after paying the claims of the preferred creditors, *pro rata* among all the creditors.

Nor is the validity of such assignment affected, by its containing a clause providing for the delivery of the surplus of the property to the assignor, which shall remain after the assignee shall have fully performed the trust created by the assignment.

And such an instrument imports a consideration,—especially where a nominal consideration is expressed, and the assignee executes a covenant for the faithful performance of the trust.

Upon the execution of such an instrument, the relation of trustee and *cestui que trust* is at once created between the assignee and the creditors, so that the assignor cannot revoke the instrument; and the creditors cannot hold the assignee as trustee under the statute providing for the trustee process, when it does not appear that there will be a surplus remaining in the hands of the assignee, after paying all the debts.

By the statute of 1843,—Acts of 1843, p. 7,—all general assignments, there-after made for the benefit of creditors, are declared to be, as against such creditors, *null and void*; and this statute prohibits, at least, an assignment of *all the property* of an insolvent debtor, for the benefit of *all his creditors,* even though they are to enjoy it *pro rata ;* while it allows of a *preference* to be given to favorite creditors, to the exclusion of others,—and especially, if the insolvent excepts from the assignment a remnant of his property. BENNETT, J.

TRUSTEE PROCESS. The trustee disclosed, in substance, as follows.

On the eighth day of May, 1841, the principal debtor, Denison, for the consideration, as expressed, of one dollar, executed to the trustee, Campbell, an assignment of all his property, excepting such as was exempt, by statute, from attachment, in trust, to be converted into money, and the proceeds, after paying the costs and charges of the assignee, to be disposed of for the purpose of paying the debts of the assignor, in the order and under the restrictions expressed as follows;—" In the first place, that he shall pay to David Crawford ' a certain note executed by said Joseph, and Edward Hall, to said

' Crawford, and thereby to release certain property which has been
' placed in the hands of said Hall as security for his signing said
' note as surety for said Joseph H. Denison ; then upon trust to pay
' Lorenzo Field a certain debt due to him from said Denison, and
' to secure the payment of which said Denison has delivered to said
' Field two boxes of goods and articles of property ; then upon trust
' to pay and discharge, so far as the same will go, and in rateable
' proportions, all the just debts, claims and demands of such of the
' creditors of the said Joseph H. Denison as shall, within ninety days
' from the date of these presents, become parties thereto by signing
' and executing the same ; and, after the said payments aforesaid, to
' pay the other creditors of the said Joseph H. Denison, in proportion
' to the amount of the debts and liabilities in their favor against the
' said Denison; and if, lastly, any thing shall remain, after making
' the payments aforesaid, including all the expenses, costs and
' charges of said trusts, to pay over the balance to the said *Joseph*
' H. Denison."

The assignment contained a clause releasing all claims, which
those creditors, who should sign it, had against Denison, and also a
covenant, on the part of the trustee, for the faithful execution of
the trusts, and was duly executed by the assignor and assignee, but
was not signed by any one of the creditors of the assignor, nor was
it ever assented to by the creditors, any farther than the law would
imply an assent from the facts above detailed. The assignee took
possession of the property assigned, and, at the time his disclosure
was made, retained it, or the avails of it, in his possession. On the
20th of May, 1841, the writ in the present suit was served upon the
assignee, and soon after several of the other creditors commenced
actions, summoning him as the trustee of Denison. Some few of
the other creditors had notified the assignee that they should claim
from him a dividend upon their claims against Denison. The as-
signee was not a creditor of Denison, at the time of the execution
of the assignment.

The county court adjudged that the assignee was chargeable in
this suit, as the trustee of Denison, for the property of Denison in
his hands, to the same extent as if the assignment had not been
made ; to which decision the trustee and principal debtor excepted.

*W. C. Bradley* for trustee.

It is contended that the assignment, in this case, is good, as the law stood at the time of its execution.   The admitting a preference is not objectionable; *Morse* v. *Slason*, 13 Vt. 307; Angel 27, 28; U. S. Dig. 258, §§ 258, 345, 346; nor is the time limited unreasonable; Angel 123.   Nor would the mere requirement of a release defeat it; Angel 103, 111, *et seq.*   But, in such cases, if creditors are to have *no* benefit, except on condition of a release, their assent will not be presumed; 5 Mass. 207; 2 Binney 180; 6 Cow. 271.   But an offer of preference, instead of *pro ratar* distribution, to such creditors as choose to release, does not vitiate, nor is it a condition coercive; *Lentilhon* v. *Moffat*, 1 Edw. 464; Angel 109.   Nor need the creditors sign the assignment; Angel 172; nor manifest their accession to it; 1 Edw. 262; for their assent is presumed; Angel 168, 178.

*A. Keyes* for plaintiffs.

The assignment contains a clause of discharge.   If the assignment is made in trust for the benefit of preferred creditors, unconditionally, the law presumes their assent; but when there are conditions in the assignment, that the creditors shall release their claims, this presumption does not arise; *Halsey* v. *Whitney*, 4 Mason 206; *Wheeler* v. *Sumner*, Ib. 183; *Lippencott* v. *Barker*, 2 Binney 174; and where there are no preferences, the law does not presume assent; *Widgery* v. *Haskell*, 3 Mass. 144; *Stevens et al.* v. *Bell*, 6 Ib. 339; *Russell* v. *Woodward*, 10 Pick. 415; *Brewer* v. *Pitkin*, 11 Ib. 298; *Battles* v. *Fobes*, 21 Ib. 239; and in such case the attaching creditor is allowed to hold against all the creditors, not assenting at the time of the attachment.

The opinion of the court was delivered by

BENNETT, J.   This case involves the legal effect of the assignment of the principal debtor.   It is a general assignment of *all* his estate and effects, for the benefit of his creditors, with the exception of some few articles of trifling value, and which the law exempts from execution.   After the payment of all charges and expenses, attending the performance of the trust, and the payment of the debts

49

due Crawford and Field, the trustee is to pay, in rateable proportions, the debts of such creditors as shall, within ninety days, make themselves parties to the assignment by signing the same, and, after the full payment of such class of creditors, the trustee is required to pay the other creditors *pro rata;* and the assignment reserves the *surplus,* if any, after the payment of all the debts, to the use of the assignor. It also contains a release of all claims, which those creditors, who should sign it, had against the assignor. The assignment contains covenants, on the part of the *trustee,* for a faithful performance of the trust, and he made himself a party to it, by executing the same. None of the creditors entitled themselves to a preference by signing the instrument and discharging their debts, and no assent of any of the creditors is found, farther than what the law will presume. This suit was commenced the 20th of May, (12 days after the assignment was executed by the assignor and trustee,) and the disclosure was filed the following April.

Our courts have, on several occasions, and, as I think, with great propriety, sustained the validity of general assignments, made, *bona fide,* for the benefit of creditors; and it may well be inquired, why they should not be sustained? In *Pickstock* v. *Lyster,* 3 M. & S. 375, Lord Ellenborough has said, "that a general assignment for the benefit of creditors is to be referred to an act of duty, rather than of *fraud,* when *none* is proved." It arises out of the discharge of the moral duties attached to the assignor's character, as debtor, to make the fund available for the whole body of his creditors. Bayley, J., speaking of the assignment in that case, says, "that, so far from its being *fraudulent,* it was the most honest act the party could do." It is difficult to conceive, why a debtor, feeling that he has not sufficient property to satisfy all his debts, may not, through an agent, distribute what he has got among his creditors.

It has been said, that general assignments operated as a *fraud* upon our attachment law. But is such an opinion well founded? It may not be altogether apparent, what is precisely meant by this general objection. To assume that they are a *fraud* upon the attachment law is to assume the point which is to be established. A creditor may be defeated, or delayed, in the satisfaction of his debt, either by a *bona fide* sale, or by a preference given to another cred-

itor.   The common law fully sustains the right of prefering one creditor to another.   The right arises out of that absolute ownership, which every man has in that which is his own ; and it is no fraud, that property is disposed of by an insolvent, *with the intent* to give a preference, unless prohibited by some bankrupt law.   If a debtor may prefer one creditor to another, it would seem somewhat strange, that he should not be allowed to prefer *all* to *one.*   If it be honest to convey all of a debtor's property, for the benefit of all his creditors, if it be a moral and a just discharge of duty, then it would seem to be a poor objection, that, by such means, one creditor may be defeated of his *process* to levy his whole debt.   It should be remembered, that, by the opposite course, other creditors might lose their *whole* debts.   The attachment law, it is true, allows a preference to be created *in invitum.*   But the legal title to the property passes, by the assignment, to the trustee ; and no attachment can be made, which can avail the party, unless, at the time it is made, the property belonged to the debtor.

By the statute passed in 1843, it was enacted, that all general assignments, thereafter made for the benefit of creditors, should, as to such creditors, be *null and void.*   What assignments shall be considered *as general,* and coming within the purview of the law, remains to be settled by judicial determination.   I take it, the statute at least prohibits an assignment of *all the property* of an insolvent debtor to a trustee, for the benefit of *all his creditors,* even though they are to enjoy it *pro rata;* while it allows a *preference* to be given to favorite creditors, to the exclusion of others, and especially, if the insolvent excepts from the assignment a remnant of his property. Thus *equality* among creditors is discountenanced, in disregard of the long established maxim, that " *equality* is equity."

It seems to me, that general assignments, for the benefit of *all* the creditors, are the class entitled to favor, if any.   If made *bona fide,* and their object carried out in good faith, they are well calculated to promote the interest of all concerned, and have almost uniformly received the approbation of the most enlightened jurists. The property should be sacredly applied to the payment of the debts, and the trustee should be held to a faithful performance of his trust. If creditors suffer from the selection of irresponsible, or unfaithful,

trustees, it would seem that the evils resulting from such a source might be guarded against, by requiring them to give security for the performance of the trust, and also to file inventories of the property assigned in some proper office; and if the trustees are not already sufficiently, at all times, under the control of chancery, the powers of that court over them might be enlarged.

If, then, general assignments to a trustee, for the benefit of creditors, are to be sustained, as this court has more than once decided, the enquiry arises, is there any thing in this case, which should invalidate the present assignment?

No objection can be made to it for a want of consideration. The debts due the creditors constitute a consideration of the highest kind. Besides, a nominal consideration is specified in the deed of assignment; and there is a direct covenant upon the part of the trustee for a faithful performance of the trust. *Wilt* v. *Franklin*, 1 Binney 517. *Marbury* v. *Brooks*, 7 Wheaton 556. *Brooks* v. *Marbury*, 11 Wheaton 78.

We think there is no such stipulation for a release of debts by the creditors, as should invalidate this assignment. The law seems to be quite well settled, that a debtor may indirectly exert an influence over the creditors, through hope and fear, by the insertion of a provision in the assignment, that they shall only be entitled to their order of preference upon their executing a release of their debts within a reasonable time. In this assignment a release is contained for such creditors, as shall, within ninety days, become parties to it. No claim is made, that the time is unreasonable. Those who do not release their debts are not excluded from all benefit under the assignment, but only from a *preference.* As no creditors complied with the condition, upon which they were to be *preferred,* the effect is, that the property must be distributed *pro rata* among all the creditors, with the exception of the two who were preferred without condition. The release was not a condition, upon which the property was to vest in the trustee, but only affected the rate of distribution. If any of the creditors had chosen to have gained a *preference* upon the terms prescribed, their act should not be imputed to a coercive necessity, to prevent an exclusion of all benefit from the assigment, or even of being postponed to

Hall et al. *v.* Denison & Tr.

all other creditors. This must be regarded as a mode of creating a *preference* among creditors, and the act of releasing the debts *voluntary* on the part of the creditors, and therefore not objectionable· See *Lippencott v. Barker*, 2 Binney 174; *Cheever v. Clark*, 7 S. & R. 510; *King v. Watson*, 3 Price Exch. Rep. 6; *Halsey v. Whitney*, 4 Mason 206; *DeCaters v. Le Ray De Chaumont*, 2 Paige 449; *Brashear v. West et al*, 7 Peters 614; *Armstrong v. Byrne*, 1 Edw. Ch. Rep. 81 ; and *Lentilhon v. Moffat*, Ib. 464.

Some of the cases have gone the length of holding, that, if the creditors were excluded all benefit under the assignment, unless, within a given time, they executed releases, still the assignment was not void. It is not necessary to inquire whether we should be willing to go that length. It is sufficient to say, that this assignment does not contain such a provision, as· to render it oppressive upon creditors and fraudulent.

It is said that the trustee process should prevail over the assignment, from the want of assent to it by the creditors, prior to the service of the writ. By the common law, in the creation of trusts by deed, it is not necessary that the *cestui que trust* should be a party to the deed, or assent to it, and valid trusts have frequently been created in favor of persons not *in esse* at the time. Ordinarily, all that is requisite is, a person competent to create the trust, and an assignee, competent to take the legal title. I am aware that it has been held in Massachusetts, and I believe in Maine, that the assent of creditors to be benefitted by the attachment was essential to its validity, so as to exclude an intervening attachment by a creditor not a party to the assignment. But, I think, to hold a direct and express assent necessary is a departure from well established principles. The legal estate immediately passes to, and vests in, the trustee; and a court of equity will compel an execution of the trust for the benefit of creditors, though not at the time parties to, or assenting to, the assignment. *Nicoll v. Mumford*, 4 Johns. Ch. Rep. 529. *Brooks v. Marbury*, 11 Wheaton 97. *Gray v. Hill*, 10 S. & R. 436. *Halsey v. Whitney*, 4 Mason 206. *Cunningham v. Freeborn*, 1 Edw. Ch. Rep. 262. *S. C.*, 11 Wend. 240. Rob. on Fraud. Conv. 429, 434.

The relation of trustee and *cestui que trust* is at once created be-

tween the assignee and the creditors, so that the assignor cannot revoke the instrument. See *Ellison* v. *Ellison*, 6 Vesey 656, and *Bunn* v. *Winthrop*, 1 Johns. Ch. Rep. 329. The assent of the creditors, especially where the assignment is to the trustee for the benefit of all the creditors, without the annexation of any condition, will be inferred, as a presumption of law, unless the contrary appears. The common principle is, that a grantee is presumed to assent to a conveyance, which is for his benefit, and the same principle well applies to the *cestui que trust*. It must be for the benefit of the creditors to receive all the effects, which the debtor has, in the liquidation of their debts. *Wilt* v. *Franklin*, 1 Binney 518. *Halsey* v. *Whitney*, 4 Mason 215. If the creditors are to have the benefit of the assignment, only upon the condition that they discharge their debts, their assent might not be presumed. In such case, it would involve a question of discretion, in regard to which there might be a difference of opinion. In the present case the want of an express assent can only affect the right to a *preference*, and, it being for the benefit of all the creditors to take *pro rata* shares under the latter clause of the assignment, their assent to such a distribution may well be presumed. With the exception of the two creditors named, who had security for their debts prior to the assignment, the effect is to make a *pro rata* disposition of all the property of the insolvent among all his creditors, and it is an ancient maxim of the law, that *equality is equity*.

As this is a general assignment for the benefit of all the creditors, there can be no objection to the reservation of the surplus to the assignor, after all his debts are paid. The surplus would, by implication of law, without any express reservation, result to him. If the reservation to the assignor could injure any of the creditors, it might merit a different consideration.

No claim is made to charge this trustee upon the ground of a surplus, after the payment of the debts, still remaining in his hands.

The result is, the judgment of the county court is reversed, and the trustee is discharged, with his costs; and the judgment against the principal debtor is affirmed, without costs in this court.