Submitted on brief without argument November 24, affirmed December 1, 1914, rehearing denied January 5, 1915.

# PELTON *v.* SHERIDAN.

(144 Pac. 410.)

**Bankruptcy—Attachment Lien—Effect of State Statute.**

1. Where an attachment was levied on property prior to the filing by the debtor of an assignment for benefit of creditors, under Sections 7540–7555, L. O. L., and more than four months before the debtor was declared a bankrupt in a federal court, but judgment on the attachment was not obtained until after the assignment and bankruptcy proceedings, the lien of attachment was valid, though Section 7540, L. O. L., provides that all attachments, on which judgment is not taken at the time of the assignment, are discharged, since the state statute, being suspended by Bankrupt Act of July 1, 1898, Chapter 541, 30 Stat. 544, could have no operation whatever.

**Bankruptcy—State Insolvent Laws.**

2. Where a general assignment has been made by a debtor of his property that would have been available at common law, or when made pursuant to a state statute regulating the procedure, which enactment does not provide for the debtor's release, and hence is not an insolvent law, such transfer is upheld if not attacked by federal bankruptcy proceedings within the time limited therefor.

**Bankruptcy—"Insolvent Law"—What Constitutes.**

3. Sections 7540–7555, L. O. L., permitting a debtor to voluntarily file an assignment for benefit of creditors without preference, and providing that, if all his property is administered on and more than 50 per cent of the indebtedness paid, the debtor shall be discharged, is an insolvent law suspended by Bankrupt Act of July 1, 1898.

[As to effect of federal bankruptcy act on state insolvency laws, see notes in 41 Am. Dec. 447; Ann. Cas. 1913E, 957.]

From Douglas: Mr. James W. Hamilton, Judge.

Statement by Mr. Justice Moore.

This is an appeal by a trustee in bankruptcy from a part of a judgment. The facts are that, an action having been commenced in the Circuit Court of the State of Oregon for Douglas County by J. E. Pelton against T. R. Sheridan to recover the amounts of two promissory notes executed by the defendant, a writ of attachment was issued and duly levied upon Sheridan's real property situate in that county, creating a lien on

the premises March 19, 1913. Pursuant to the provi-
sions of our statute, entitled "An act to secure credi-
tors a just division of the estates of debtors who con-
vey to assignees for the benefit of creditors," approved
October 18, 1878, and amendments thereto, which en-
tire enactment is incorporated as Sections 7540–7555,
L. O. L., Sheridan on November 7, 1913, voluntarily
executed to O. P. Coshow a deed of all his property
that was liable to execution, in trust for all his credi-
tors, without any preference or priority, which con-
veyance was duly recorded four days after it was made.
By consideration of the United States District Court
for the District of Oregon, pursuant to a petition there-
for, filed against him January 28, 1914, Sheridan was
thereafter adjudged to be a bankrupt, and, A. N. Or-
cutt having been appointed trustee of the bankrupt's
estate and given an undertaking as such, his bond was
duly approved. A judgment was rendered in this ac-
tion on March 3, 1914, as prayed for in the complaint,
and it was also then adjudged that the real property
so attached should be sold to satisfy the plaintiff's
demand, as authorized by Section 308, L. O. L. Based
upon certified copies of the adjudication of bankruptcy,
the order approving his bond as trustee, and the deed
of general assignment, Orcutt moved in the state court
to set aside such order of sale, but, the motion having
been denied, he filed a petition of intervention, pre-
dicated upon which he was substituted as a party de-
fendant and now seeks to review the refusal to vacate
the order of sale.

Submitted on briefs without arguments under the
proviso of Rule 18 of the Supreme Court: 56 Or. 622
(117 Pac. xi).          AFFIRMED. REHEARING DENIED.

74 Or.—12

For appellants there was a brief over the name of *Mr. Oliver P. Coshow.*

For respondent there was a brief submitted by *Mr. Benjamin L. Eddy.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The act of Congress of July 1, 1898, regulating the practice and precedure in such cases, contains clauses as follows:

"Acts of bankruptcy by a person shall consist of his having * * made a general assignment for the benefit of his creditors": Chapter 3, § 3, subd. 4, Bankrupt Act (U. S. Comp. Stats. 1913, § 9587, 1 Fed Stats. Ann., pp. 538, 542).

The statute of this state, hereinbefore referred to, contains a clause which reads:

"No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims; and such assignment shall have the effect to discharge any and all attachments on which judgment shall not have been taken at the date of such assignment": Section 7540, L. O. L.

The enactment further provides, in effect, that, in case such an assignment is made, the assent of the creditors will be presumed: Section 7541, L. O. L. The judge of the Circuit Court of the county in which the assignment is or should be recorded may, upon proper petition therefor, order a meeting of the creditors to choose an assignee in lieu of the person named as such in the assignment: Section 7542, L. O. L. The assignee is at all times subject to the orders of the court or

judge: Section 7548, L. O. L. Debts not due may be presented; and all creditors who do not exhibit their claims within three months from the publication of the notice to creditors are not permitted to participate in the dividends until after full payment of the claims exhibited within that time: Section 7551, L. O. L. Upon the final settlement of the estate, if it appear, to the satisfaction of the court, that the assignor has been guilty of no fraud in making the assignment, nor concealed or disposed of any part of his property, in order to place it beyond the reach of his creditors, but has acted fairly and justly in all respects that his estate has been made to realize the greatest sum possible and not less than 50 per cent of the full amount of the indebtedness over and above all expenses of the assignment, an order shall be made allowing the final account and discharging the assignor from any further liability on account of any indebtedness existing against him prior to the making of such assignment, and thereafter such assignor shall be freed from any liability on account of any unsatisfied part of the indebtedness existing against him prior to the making of the assignment: Section 7554, L. O. L.

It will be remembered that no judgment had been rendered in this action when Sheridan executed his deed of general assignment; that less than four months elapsed after recording such conveyance, when the petition was filed against him for an adjudication of bankruptcy; and that more than that period of limitation expired after his real property was attached before such petition was filed. Predicated upon these facts it is contended by defendant's counsel that, no judgment having been rendered in the action when Sheridan's general assignment was made, the recording of such conveyance November 11, 1913, by its own force

immediately dissolved the lien of the attachment, and, such being the case, an error was committed in refusing to set aside the order of sale of the attached property. The legal principle thus asserted is denied by plaintiff's counsel, who maintains that the act of Congress of July 1, 1898, suspended the operation of Sections 7540–7555, L. O. L., which enactment is a general insolvency law, analogous to the Bankruptcy Act; that the proceedings undertaken in pursuance of the provisions of the state law are void, and, such being true, no error was committed as alleged. The Federal Constitution, Article I, Section 8, clause 4, empowers Congress to establish uniform laws on the subject of bankruptcies throughout the United States. This grant of authority has been taken advantage of by the act of Congress of July 1, 1898, whereby the District Courts of the United States in the several states, the Supreme Court of the District of Columbia, the District Courts of the several territories, and the United States Courts in the Indian Territory and the District of Alaska are vested with original jurisdiction, within their respective territorial limits, of all bankruptcy proceedings: Bankruptcy Act, c. 2, § 2. It is usually determined that, when the power thus conferred has been employed by the enactment of a national bankruptcy law, such act *ipso facto* suspends the operation of all state insolvency or bankrupt statutes in conflict therewith: *State ex rel.* v. *Superior Court,* 20 Wash. 545 (56 Pac. 35, 45 L. R. A. 177, 186). In a note to that case it is said:

"It is generally held that the operation of a state insolvent law is suspended by the passage of a federal bankrupt act, and that, after the passage of the same, proceedings cannot be instituted under state insolvent laws."

In addition to the cases cited in support of the note, see, also, 16 Am. & Eng. Ency. Law (2 ed.), 642; 5 Cyc. 240; *Tua* v. *Carriere,* 117 U. S. 201 (29 L. Ed. 855, 6 Sup. Ct. Rep. 565); *Ketcham* v. *McNamara,* 72 Conn. 709 (46 Atl. 146, 50 L. R. A. 641).

In *Boese* v. *King,* 108 U. S. 379 (27 L. Ed. 760, 2 Sup. Ct. Rep. 765), it was ruled that a general assignment of a debtor's property made for the benefit of creditors, purporting to have been executed under an insolvent law of New Jersey, which statute had, at the time of the assignment, been suspended in whole or in part by the federal Bankrupt Act of 1867 (Act March 2, 1867, c. 176), might nevertheless be sustained as sufficient to pass a title to assignees, in the absence of proceedings in bankruptcy impeaching it, or of appropriate steps by the assignor for its cancellation. In that case, however, four of the justices dissented.

2. Where a general assignment has been made by a debtor of his property that would have been available at common law, or when made pursuant to a state statute, regulating the procedure, which enactment does not provide for the debtor's release, and hence is not an insolvent law, such transfer is upheld, if not attacked by federal bankruptcy proceedings within the time limited therefor: 5 Cyc. 241; *In re Sievers* (D. C.), 91 Fed. 366; *Mayer* v. *Hellman,* 91 U. S. 496, 502 (23 L. Ed. 377). In the latter case it was held, in construing the Bankruptcy Act of 1867, that an assignment by an insolvent debtor of his property to trustees for the equal and common benefit of all his creditors was not fraudulent and, when executed six months before proceedings in bankruptcy were taken against the debtor, was not assailable by the assignee in bankruptcy subsequently appointed; and that the assignee was not entitled to the possession of the property from the

trustees. In deciding that case, Mr. Justice Field, speaking for the court, says:

'In the argument of the counsel of the defendant in error, the position is taken that the Bankrupt Act suspends the operation of the act of Ohio regulating the mode of administering assignments for the benefit of creditors, treating the latter as an insolvent law of the state. The answer is that that statute of Ohio is not an insolvent law, in any proper sense of the term. It does not compel, or in terms ever authorize, assignments; it assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties; it requires them to file statements showing what that have done with the property, and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment; it leaves his after-acquired property liable to his creditors precisely as though no assignment had been made. The provisions, for enforcing the trust, are substantially such as a court of chancery would apply, in the absence of any statutory provision. The assignment in this case must therefore be regarded as though the statute of Ohio, to which reference is made, had no existence. There is an insolvent law in that state; but the assignment in question was not made in pursuance of any of its provisions. The position, therefore, of counsel that the bankrupt law of Congress suspends all proceedings under the insolvent law of the state has no application.''

In support of the legal principle last asserted, see *Reed* v. *McIntyre*, 98 U. S. 507, 509 (25 L. Ed. 171), where Mr. Justice Harlan remarks:

''It is stated in the printed arguments of counsel for the appellee, and the statement is not controverted by

opposing counsel, that at the date of the assignment to
Combs there was no statute of Minnesota relating to
assignments by debtors for the benefit of creditors.''

Further in the opinion it is observed:

''Our conclusion therefore, is that the assignment to
Combs could not, upon common-law principles, be im-
peached simply because it had the effect to prevent the
appellant, by means of the execution levy, from secur-
ing priority over all other creditors.''

To the same effect, see, also, Burrell, Assignments
(6 ed.), § 27; *Hoague* v. *Cumner,* 187 Mass. 296 (72
N. E. 956); *Segnitz* v. *Garden City B. & T. Co.,* 107
Wis. 171 (83 N. W. 327, 81 Am. St. Rep. 830, 50
L. R. A. 327).

In *Sturges* v. *Crowninshield,* 4 Wheat. 122, 193 (4
L. Ed. 529), Mr. Chief Justice MARSHALL, speaking
upon the subject of bankruptcies and illustrating the
difference between insolvency laws and bankruptcy en-
actments, says:

''Congress is not authorized merely to pass laws, the
operation of which shall be uniform, but to establish
uniform laws on the subject throughout the United
States. This establishment of uniformity is, perhaps,
incompatible with state legislation on that part of the
subject to which the acts of Congress may extend. But
the subject is divisible in its nature into bankrupt and
insolvent laws, though the line of partition between
them is not so distinctly marked as to enable any per-
son to say, with positive precision, what belongs ex-
clusively to the one, and not to the other, class of laws.
It is said, for example, that laws which merely liberate
the person are insolvent laws, and those which dis-
charge the contract are bankrupt laws. But if an act
of Congress should discharge the person of the bank-
rupt, and leave his future acquisitions liable to his
creditors, we would feel much hesitation in saying that
this was an insolvent, not a bankrupt, act, and there-

fore unconsitutional. Another distinction has been stated, and has been uniformly observed. Insolvent laws operate at the instance of an imprisoned debtor; bankrupt laws at the instance of a creditor.''

3. A state statute, authorizing a general assignment, is an insolvent law when it permits a person of any class voluntarily to take advantage of its provisions by transferring his property in trust for the benefit of his creditors, and provides that, upon a due administration of his estate and a compliance with the requirements of the statute regulating the proceedings, he is thereby discharged from all liabilities on account of his debts which had been incurred at the time of making the general assignment: 4 Words & Phrases, 3655; *Cook* v. *Rogers,* 31 Mich. 391; *Haijek & Simecek* v. *Luck,* 96 Tex. 517 (74 S. W. 305).

From an examination of the provisions of our statute to which references have been made, it will be seen that a debtor can voluntarily execute a deed of general assignment of all his property, but that neither of his creditors nor all of them can compel an involuntary assignment. It will further be observed, from a perusal of the enactment, that if it appear to the satisfaction of the Circuit Court of Oregon for the county in which the deed of assignment is recorded that the assignment was made in good faith, that the debtor's estate has been fairly and fully administered upon, and that 50 per cent of his indebtedness has been paid, an order may be made discharging him from all liabilities existing at the time the general assignment was made. The statute in question is undoubtedly an insolvent law.

By the bankrupt law of 1867, as amended the following year (Act July 27, 1868, c. 758, 15 Stat. 227), an assignment for the benefit of creditors, which was

made without preference prior to the institution of bankruptcy proceedings, was not necessarily regarded as an act of bankruptcy, and an assignee in bankruptcy could not recover the property so transferred without proving that the person receiving it "had reasonable cause to believe that a fraud on this act was intended." While that law remained in force, it was usually held that an honest conveyance by an insolvent, under a state insolvent law, without actual fraud, and with no intent to defeat the act of Congress, could not be treated as absolutely void. The Bankrupt Act of 1898, however, declares every general assignment by a debtor of his property for the benefit of his creditors to be an act of bankruptcy, and concludes with the following clause:

"Proceedings commenced under state insolvency laws before the passage of this act shall not be affected by it."

In *Ketcham* v. *McNamara,* 72 Conn. 709, 713 (46 Atl. 146, 148, 50 L. R. A. 641, 643), Mr. Justice BALDWIN, referring to such clause, says:

"The necessary implication is that any such proceedings, commenced after the passage of the act, are affected by it."

In that case it was held that an action by a trustee in insolvency under a statute of Connecticut, which in its fullest sense was an insolvency law, to set aside a fraudulently conveyance of goods by the insolvent since the Federal Bankruptcy Act of 1898 took effect, could not be maintained, although the insolvent had not been declared a bankrupt, since the title of the trustee under the state insolvency law was not merely voidable by proceedings in bankruptcy, but was absolutely void.

It will be assumed in the case at bar that Sheridan's general assignment was made in good faith, without preference, and for the equal benefit of all his creditors; but the deed having been executed in pursuance of the provisions of an insolvent law, the operation of which was suspended by the Bankruptcy Act, the attempted conveyance was void; and, such being the case, the assignment did not discharge the lien of the attachment. The levy of the writ having been made more than four months prior to the institution of the bankruptcy proceedings, the lien of the attachment, though dependent upon a judgment subsequently obtained, was not invalidated thereby: *In re Beaver Coal Co.*, 113 Fed. 889 (51 C. C. A. 519).

It follows, from these conclusions, that the part of the judgment appealed from should be affirmed; and it is so ordered.      AFFIRMED.   REHEARING DENIED.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

In this case the plaintiff instituted an action against the defendant March 19, 1913, and on the same day caused an attachment to be levied upon the defendant's real property. The next occurrence in the order of events was an assignment by Sheridan of all his property on November 7, 1913, for the benefit of his creditors, under the provisions of the state assignment law found in Sections 7540–7555, L. O. L. This deed was recorded in the county, where the real property was situate, November 11, 1913. In pursuance of a petition filed in the United States District Court January 28, 1914, Sheridan was adjudged a bankrupt in that court February 17, 1914. On March 3d of that year the state Circuit Court entered a judgment in the ac-

tion with an order to sell the attached property.    April
16, 1914, the trustee in bankruptcy moved in the state
court to set aside the order for the sale of the attached
property, which motion was denied, and the trustee ap-
peals, after having been substituted for the defendant
in the case.

It must be conceded that the courts of the United
States, in the exercise of jurisdiction under the federal
law, did not acquire any authority over the property of
Sheridan until the petition in bankruptcy was filed.
Prior to that time Sheridan could deal with his prop-
erty as he chose.    This being true, he had a right to
make an assignment under the provisions of and with
the results declared by the law of this state on that
subject.    An important effect of such an assignment is
to discharge any and all attachments on which judg--
ment shall not have been taken at the date of such as-
signment: Section 7540, L. O. L.    This transaction of
Sheridan remained valid for all purposes, according to
its original design, until the operation of the Federal
Bankrupt Act was set in motion by the petition to ad-
judge him an involuntary bankrupt.    As said by Mr.
Justice HOLMES in *Randolph* v. *Scruggs,* 190 U. S. 533,
537 (47 L. Ed. 1165, 23 Sup. Ct. Rep. 710, 712):

"The assignment was not illegal.    It was permitted
by the law of the state, and cannot be taken to have
been prohibited by the bankruptcy law absolutely in
every event, whether proceedings were instituted or
not.  * * It had no general fraudulent intent.    It was
voidable only in case bankruptcy proceedings should
be begun.    At the time when it was made, the institu-
tion of such proceedings was uncertain.    It seems to us
that it would be a hard and subtle construction to say,
as seems to have been thought in *Bartlett* v. *Bramhall,*
3 Gray (Mass.), 257, 260, that when they were insti-
tuted they not only avoided the assignment but made it

illegal by relation back to its date, when, if they had not been started, it would have remained perfectly good."

In that case the Supreme Court of the United States so far recognized the validity of the assignment under the state law as to sanction payment of some of the expenses connected therewith. In *Johnson* v. *Crawford et al.* (C. C.), 154 Fed. 761, it was held that:

"A voluntary assignment for the benefit of creditors, though forming part of the general insolvency system of a state being valid at common law, may be carried out, notwithstanding the Federal Bankruptcy Act, unless such assignment is directly called in question by a petition in bankruptcy."

*In re Chase,* 124 Fed. 753 (59 C. C. A. 629), contains a lengthy examination of the authorities on this subject, and the court there concludes that:

"Nothing in these expressions * * declares that general assignments, honestly made, are contrary to the policy of the bankruptcy statutes; and, on the other hand, they are declared to be in harmony therewith."

Commenting upon such a situation, the court said in *Thompson* v. *Shaw,* 104 Me. 85, 90 (71 Atl. 370, 372):

"Nothing appears in the assignment to indicate fraud. It is in the usual form of a common-law assignment for the benefit of creditors. By it all the assignor's property, not exempt from attachment and execution, was conveyed to be divided *pro rata* among all of her creditors who should assent thereto, and reasonable time for such assent was provided for. Such an assignment, if *bona fide,* is lawful. It is not *contra bonos mores.* Until assailed by some one claiming rights against it, under the provisions of the bankruptcy law, it stands as a valid transfer of the property described as conveyed therein."

By subdivision E of Section 67 of the Bankrupt Law
(U. S. Comp. Stats. 1913, § 9651, 1 Fed. Stats. Ann.,
p. 692), all conveyances, transfers, assignments or en-
cumbrances, made by the bankrupt with the intent on
his part to hinder, delay or defraud his creditors are
declared void. It is the element of fraud alone which
works out this result, although Section 3 of that law
makes a general assignment for the benefit of his cred-
itors an act of bankruptcy that does not make it neces-
sarily void. In view of the fact that that statute has
elsewhere made the intent to defraud a necessary feat-
ure of a void assignment, we ought not to enlarge Sec-
tion 3 in that manner as against an assignment made
in good faith, as we must presume this one to have
been.

The tendency of the federal decisions on this point,
of which *Randolph* v. *Scruggs,* 190 U. S. 533, 537 (47
L. Ed. 1165, 23 Sup. Ct. Rep. 710, 716), is an example,
seems to be to treat the assignment as valid and recog-
nize it so far as it is an aid of the purpose of the law
and beneficial to the bankrupt's estate. In its effect of
dissolving the previous attachment in the state court,
the assignment was advantageous to the bankrupt's
estate and efficient in carrying out the general design
of the law to provide an equal distribution of his estate
for the benefit of all his creditors in proportion to the
amounts of their respective claims. When the federal
court assumed jurisdiction of the matter in pursuance
of the petition in bankruptcy, it took the estate of
Sheridan as it found it, and was bound to administer
it on that basis, excepting, of course, the provisions for
setting aside sales or transfers of property made
within four months of the filing of the petition or in
fraud of creditors. In a certain sense the federal
court assumed charge of what might be called a going

concern in the shape of a proceeding lawfully initiated in the state court to accomplish a fair division of a debtor's property among his creditors. The new management had the right to avail itself of all that was advantageous to it in the doings of the former concern. It is nothing more than a question of administration, which, of course, goes to the federal court under the bankrupt law, but only when and not until its jurisdiction is asserted.

The situation, then, was that the federal court found an estate of Sheridan free from the previous attachment, and, when it assumed jurisdiction, this circumstance did not revive the attachment. In other words, the making of the assignment, while constituting an act of bankruptcy, within the meaning of the federal statute, was not void when made, but carried with it the effect declared by our state law. If no creditor of Sheridan had initiated the bankruptcy proceedings in the federal court, it would have been perfectly legitimate for his assignee under the state law to have wound up his affairs and paid his creditors, resulting in Sheridan's discharge from his debts, provided his estate had paid 50 per cent or more of his indebtedness. In disregarding the effect of the assignment, valid at least at the date of its execution, and, in spite of it, making the order to sell the attached property, the Circuit Court violated the rules of procedure prescribed for it by the state of whose judicial system it is a part. It was in error in refusing to retrace its steps on the motion of the trustee in bankruptcy.

The general purpose, both of the federal bankrupt act and of our state assignment law, is to provide for a ratable distribution of a debtor's estate among his creditors, according to the amount of their respective claims. Upholding the attachment, under the circum-

stances of this case, is at variance with this policy and secures to one creditor a preference by reason of his attachment, which was dissolved by the assignment under the state law, while the opposite determination of the issue will give effect to the intent of both state and federal legislation.

The judgment should be reversed.