Argued January 14, reversed February 8, 1916.

## SABIN v. CHRISMAN.*

(154 Pac. 908.)

**Bankruptcy—Effect of National Bankruptcy Act as to Assignments.**

1.    State laws relating to assignments for benefit of creditors are suspended by the enactment of the national Bankruptcy Act of July 1, 1898 (Chapter 541, 30 Stat. 544), and the sufficiency of such assignments are to be judged by the rules of the common law.

**Assignments for Benefit of Creditors—Sufficiency of Description of Property.**

2.    Where a debtor in an assignment for the benefit of creditors recites that he is engaged in merchandise business at a certain named city, and being unable to meet his obligations in full desires to transfer his assets, in trust, for the benefit of his creditors, such assets, consisting of a stock of general merchandise together with all fixtures used in and about the business, and all accounts and bills receivable owing to the assignor, is a sufficient identification of the property to include both stores, especially when the agent of the assignee was in possession of the property and protesting against a levy by the sheriff, the term "general merchandise" includes whatever is usually bought and sold by merchants in the ordinary course of business, and the assignment is not affected on account of the stock of merchandise being kept in two different store buildings, the assignee taking possession of the goods intended to be conveyed by the deed of assignment.

**Assignments for the Benefit of Creditors—Evidence—Question for the Jury.**

3.    As to whether or not the property in the possession of the agent of the assignee was the property that was intended to be conveyed by the assignment, *held* that matter was question for the jury.

**Assignments for Benefit of Creditors—Delaying of Creditors in Collecting Demands.**

4.    Where there is no statute regulating assignments for the benefit of creditors, a debtor may transfer his property for the purpose

*The effect of the bankruptcy law on assignments for benefit of creditors is discussed in note in 45 L. R. A. 177.    REPORTER.

of paying his debts, although such assignment may hinder and delay some creditors in the collection of their demands, but it must appear that the transaction is fair, *bona fide* and without fraud, for all the law can reasonably demand of a debtor is the faithful application of his entire property to the satisfaction of his debts.

[As to good faith as a prerequisite to a valid assignment, see note in 58 Am. St. Rep. 74.]

**Replevin—Fraud, if Relied upon, must be Alleged in Proper Pleading.**

5.  Where defendants wish to show fraud in the assignment for benefit of creditors, under which proceeding plaintiff in replevin claimed the right of possession, such fraud must be set up in the answer.

From Wasco: WILLIAM L. BRADSHAW, Judge.

Department 1.   Statement by MR. JUSTICE McBRIDE.

This is an action by R. L. Sabin against Levi Chrisman, sheriff of Wasco County, Oregon, and the Portland Association of Credit Men, a corporation, in which it appears that one P. Perlman was engaged in business at The Dalles, Oregon, conducting two stores; one containing a stock of general merchandise, consisting of clothing, etc., and the other containing furniture, hardware stores and goods of like character.   Being unable to meet his obligations in the ordinary course of business, he made the following conveyance or bill of sale to R. L. Sabin:

"Know all men by these presents, that whereas, P. Perlman, engaged in mdse. business at The Dalles, Oregon, party of the first part, is unable to meet his obligations in full in the ordinary course of business, and desires to transfer his assets in trust for the benefit, *pro rata,* of his creditors in order to avoid litigation and court proceedings: Now, therefore, in consideration of the premises and of the sum of one dollar ($1.00) and other good and valuable considerations to him in hand paid by R. L. Sabin, of Portland, Oregon, party of the second part, the receipt whereof is hereby duly acknowledged, the said party of the first part does hereby sell, assign, set over, and transfer unto the said

party of the second part all of the following described personal property, to wit: A stock of general merchandise located at The Dalles, Oregon, together with all fixtures used in and about said business. Also all accounts and bills receivable, due and owing or to become due and owing to said party of the first part. To have and to hold all of the described personal property unto the said party of the second part, his representatives and assigns forever. This transfer is made nevertheless in trust for the uses and purposes following, to wit: (1) To take possession of all of said personal property. (2) To insure the same against loss by fire. (3) To sell and dispose of said stock of merchandise at retail sales or in bulk as may to the said party of the second part seem most advantageous and to collect said notes and accounts by legal process or otherwise. (4) Out of the proceeds arising from said sales and collections to pay the actual and necessary expense incurred in carrying out this trust. (5) Out of the proceeds remaining after the payment of such expenses to pay all the creditors of said party of the first part in full, if sufficient funds be realized therefor, and if not then *pro rata* in accordance with the amounts of the respective claims and demands of said creditors and without preference except such as is fixed by law. (6) To return the overplus, if any there be, to the said party of the first part. In witness whereof the said party of the first part has hereunto set his hand at Portland, Oregon, this 15th day of August, 1914.

"P. Perlman."

Plaintiff, by his agent Foster, took possession of the stock of goods in both stores, and subsequently the sheriff, Levi Chrisman, acting upon an execution issued upon a judgment in favor of the Portland Association of Credit Men against P. Perlman, levied upon a number of stoves situated in the hardware store, and by arrangement with plaintiff's agent, who protested against the levy, left them in the store, but separate from other goods therein, in charge of one Fine, a clerk

in the store, to hold for him as sheriff. The building, without any fault of the sheriff so far as appears, was burned, and the property so levied upon was destroyed. Thereupon the sheriff, against the protest of the agent of plaintiff, levied upon a sufficient quantity of dry-goods in the general merchandise store to satisfy the exigency of his writ, and took them away and still holds them; and plaintiff brought this action of replevin, alleging the conveyance from Perlman to himself and his ownership of the property. Defendants answered denying plaintiff's ownership and right to possession, alleging that Perlman was the owner and justified under his writ. Upon the trial there was a directed verdict for defendants, and plaintiff appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Sidney Teiser.*

For respondents there was a brief over the names of *Messrs. Seitz & Clark* and *Mr. J. W. Allen,* with an oral argument by *Mr. Maurice W. Seitz.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The laws of this state concerning assignments for the benefit of creditors are suspended by the United States Bankruptcy Act: *Pelton* v. *Sheridan,* 74 Or. 176 (144 Pac. 410, 33 Am. Bank. Rep. 472). This being the case, the sufficiency of the assignment must be judged by those rules of law generally in force in this country prior to the enactment of our state statutes.

2. Does the deed of assignment sufficiently describe the property? It appears that there were two stores operated by Perlman at The Dalles. The assignment,

after reciting that the assignor is "engaged in merchandise business at The Dalles, Oregon, is unable to meet his obligations in full in the ordinary course of business, and desires to transfer his assets in trust for the benefit, *pro rata,* of his creditors," does assign to R. L. Sabin as trustee, etc., "a stock of general merchandise located at The Dalles, Oregon, together with all fixtures used in and about said business; also, all accounts and bills receivable and owing or to become due and owing to the party of the first part." We think this is a sufficient identification of the property when it appears, as it does here, from plaintiff's testimony, that the agent of the assignee was in possession of both stores and protesting against a levy by the sheriff. "General merchandise" is a comprehensive term, and includes whatever is usually bought and sold in trade or market by merchants. It includes all those things which they sell either at wholesale or retail, as drygoods, hardware, groceries, drugs, etc.: Words and Phrases, tit. "Merchandise." So that whether Perlman's goods were stoves or stockings, furniture or furs, they are all equally comprehended in the term "merchandise"; and whether the stock was kept in one building in The Dalles or in two makes no difference, if, in fact, the assignee took possession of what was intended to be conveyed.

3. In the case at bar, we think there was some evidence tending to show that the property in the possession of Foster, plaintiff's agent, was the property intended to be conveyed by the assignment, and that therefore that matter was a question of fact for the jury; and, unless there is found some other reason why the court should have taken the case from them, it committed error in so doing.

4. In considering the questions raised upon this appeal, we must ignore our own statute concerning insolvency assignments, and treat them as though they never existed, because, as decided in *Pelton* v. *Sheridan,* 74 Or. 176 (144 Pac. 410, 33 Am. Bank. Rep. 472), such statutes are suspended and of no effect until the Congress of the United States shall have repealed the present bankruptcy law. Neither must we confuse an assignment of the character of that made in the instant case with those which stipulate for a final release when the proceeds of the assigned property shall have been exhausted, or with those in the nature of composition deeds which require the signatures of creditors before becoming effective. In the present suspended condition of our assignment law, we have no limitation upon the power of a debtor to assign his property for the purpose of paying his debts, or for the purpose of paying a particular debt where there are several beyond the general equitable requirement that the transaction must be fair, *bona fide,* and without fraud.

"It would seem," says Chief Justice MARSHALL, in *Sexton* v. *Wheaton,* 8 Wheat. (U. S.) 229, 5 L. Ed. 603, "to be a consequence of that absolute power which a man possesses over his own property, that he may make any disposition of it which does not interfere with the existing rights of others, and such disposition, if it be fair and real, will be valid."

The right to transfer property is an incident naturally flowing from the right to acquire and hold it; this right being subject to the further restriction that assignments by a debtor of the whole or a greater part of his property should not be employed as a means of preserving it for his own use or benefit or of unduly protecting it from the remedies of his creditors: Bur-

rill, Assignments, §§ 9, 13. The following excerpts from decisions upon this question are embodied in a note to the last section and give the general spirit of the decisions from which they are taken:

" 'Every debtor has a legal right to assign property for the security of the debts due him, and so far from such an act being reprehended by the law, it is justified and approved': STORY, J., in *Brown* v. *Minturn,* 2 Gall. 557, 559 [Fed. Cas. No. 2021]. General assignments are spoken of by the same judge as 'encouraged by the common law': *Halsey* v. *Whitney,* 4 Mason, 206, 210 [Fed. Cas. No. 5964]. See, also, *Bascom* v. *Rainwater,* 30 Mo. App. 483; *Bryce* v. *Foot,* 25 S. C. 467; *Hauselt* v. *Vilmar,* 76 N. Y. 630; *Barton* v. *Brent,* 87·Va. 385,·13 S. E. 29; *Hyde* v. *Weitzner,* 45 Minn. 35 [47 N. W. 311]. 'A conveyance in trust to pay debts is a valid conveyance founded on a good consideration': KENT, C., in *Dey* v. *Dunham,* 2 Johns. Ch. [N. Y.] 182, 189. 'It is settled * * that an insolvent debtor may, at any time, before his property becomes bound by any lien, assign it over to trustees, for the benefit of all his creditors, by an act made *bona fide.* The assignment is to be referred to an act of duty, attached to his character of debtor, to make the fund available for the whole body of the creditors': KENT, C., in *Nicoll* v. *Mumford,* 4 Johns. Ch. (N. Y.) 522, 529. 'The right of an insolvent debtor to make an assignment for the benefit of his creditors, before the property is bound by any lien, does not admit of question, provided it be *bona fide*': 2 Tucker's Com. (443) 432. 'The right to make a general assignment of all a man's property results from that absolute ownership which every man claims over that which is his own': MARSHALL, C. J., in *Brashear* v. *West,* 7 Pet. [U. S.] 608, 614 [8 L. Ed. 801]. GARLAND, J., in *United States* v. *Bank of United States,* 8 Rob. (La.) 262, 404: 'I think * * that where an assignment is for the benefit of all the creditors of the assignor, equally and ratably, it must command the sanction of every enlightened tribunal. * * It is a practical enforcement of the maxim

that "equality is equity" ': Buckner, C., in *Robins* v. *Embry,* Smedes & M. Ch. [Miss.] 207, 258. See *Malcolm* v. *Hall,* 9 Gill [Md.] 177 [52 Am. Dec. 688]. And see the opinion of Bennett, J., in *Hall* v. *Denison,* 17 Vt. 310; and Ewing, J., in *Vernon* v. *Morton,* 8 Dana [Ky.], 247, 251. Mr. Justice Field, in *Mayer* v. *Hellman,* 13 N. B. R. 440 [91 U. S. 496, 23 L. Ed. 377]: 'Whenever such a disposition has been voluntarily made by the debtor, the courts in this country have uniformly expressed their approbation of the proceeding.' Mr. Justice Buchanan, in *State* v. *Bank of Maryland,* 6 Gill & J. 217 [26 Am. Dec. 561]: 'Equality is equity, and when a debtor makes a transfer of his property for the fair purpose of equal distribution among his creditors, he does an honest act, and discharges a moral duty': See *Kalkman* v. *McElderry,* 16 Md. 60. Mr. Justice Bailey, in *Hoffman* v. *Mackall,* 5 Ohio St. 124 [64 Am. Dec. 637]; *Forbes* v. *Scannell,* 13 Cal. 242."

Section 146, Freeman, Executions, is to the same effect. He says:

"It seems to be unanimously conceded that an assignment to a trustee for the benefit of creditors, whether general or partial, is, in the absence of statutory prohibition, valid. It operates to withdraw the property from the reach of all liens and processes taking effect subsequently to the execution of the transfer. In other words, although such a transfer necessarily tends to hinder and delay creditors, by depriving them of the right to take the debtor's property in execution, and apply its proceeds to the payment of their debts, yet, as the creditor had the right to directly turn over his property to his creditors, in satisfaction of their demands, he is allowed to accomplish the same result through the intervention of a trustee. To deny the right to hinder creditors, in a certain sense, would be to deny the right to make an assignment for the benefit of creditors, for such assignment, if given any operation, must necessarily prevent some of the creditors from reaching under execution or attachment property

which they could have reached but for such assignment.
And the assignor may have foreseen and intended this
result. He may have desired to prevent the sacrifice
of his assets, which must inevitably attend their imme-
diate seizure and sale under execution. To this extent
he has the right to hinder his creditors, and the assign-
ment is not rendered void thereby, provided the hin-
drance is only such as results from turning over the
property in good faith, to be applied to the satisfac-
tion of his debts. If, however, the hindering of credi-
tors was the object rather than the incident of the as-
signment; if the assignment was resorted to as a mere
device to gain time or to coerce the creditors, or some
of them, into making some settlement of their claims,
to which the assignor was not legally entitled—it is
doubtless void. In the absence of any statutory inhibi-
tion, a debtor may prefer any one or more of his credi-
tors, either by making payment of his liabilities to
them or by turning over property to them to be held
as security, or to be applied at once at an agreed value,
or by means of a sale, to the extinction of the debt.
In many of the states, statutes have been enacted for-
bidding preferences in assignments for the benefit of
creditors; but, in the absence of such statutes, the pre-
ferring of any creditor or class of creditors, if free
from any fraudulent intent, does not render the as-
signment fraudulent nor void. The fact that some of
the creditors are preferred to others will doubtless
cause an assignment to be viewed with suspicion, and
may, when combined with other suspicious circum-
stances, produce the conviction that it was intended
to defraud the other creditors. Of course, if any act-
ual design to defraud taints the assignment, it is void.
There are several things which, when connected with
an assignment, are well-established badges of fraud,
and some of which render the assignment fraudulent
*per se.* The most prominent of these will now be men-
tioned. An assignment will not be allowed to with-
draw property from the reach of the creditors, that it
may, to any extent, be secured for the benefit of the
assignor. He must part with all interest in the prop-

erty, except his right to such surplus as may remain after satisfying the demands of his creditors. Hence, when it appears that the debtor has reserved some portion of the property, or some interest therein, for his own benefit; or that he stipulates for some benefit or advantage for himself or for his family, to be reserved out of the proceeds—it is evident that he thereby seeks to withdraw something of value from the reach of his creditors, and the assignment is fraudulent *per se.*"

Nor is there any need of assent on the part of creditors to render the assignment valid:

"To the creation of a trust by deed in favor of any person, it is not necessary that the *cestui que trust* should either be a party or assent to it. It is clear that trusts may lawfully be created where there can be no present assent, for they may be in favor of persons not in existence. It is sufficient in general that in such cases there is a competent grantor to convey and a competent grantee to take the property. As to trusts created for the benefit of creditors, and to which they are not, technically speaking, parties, if *bona fide* made, they are unquestionably valid, and pass a legal estate to the trustee. The sole question that can arise, independent of the bankrupt law, is whether the conveyance is *bona fide* or fraudulent": Bump, Fraudulent Conveyances, p. 324.

The same authority also observes:

"The creditors may reject the beneficiary interest given to them by the assignment, and, if they do, it falls to the ground, and becomes a resulting trust for the debtor. But if the trust is for their benefit, the law presumes their assent to it until the contrary is shown. Whether the beneficiaries in the trust deed are apprised of the conveyance or not is not material. When it comes to their knowledge they are entitled to accept or reject its provisions. An express avowal of that assent is not necessary to the operation of the assignment, for the deed is complete when executed by the parties to it. If an assent is expressly given, it oper-

ates retroactively to confirm the conveyance *ab initio*. Even without such assent the assignment will prevail over a subsequent execution or attachment. If one *cestui que trust* renounces the trust, then it either inures solely to the benefit of the rest, or, if there are no others, it results to the debtor. But until the renunciation is made, or implied from circumstances, the trust continues.''

The assent of creditors will be presumed unless they, by some affirmative act, signify their dissent, and in such case it would seem that such dissent does not render the conveyance void as to those not dissenting or even to render the property conveyed liable to a subsequent execution by a dissenting creditor. Nor is such an assignment, if honestly made, void for the reason that it tends to hinder and delay creditors in the collection of their demands. The reason for this rule is thus stated:

''Although the intent to deprive all or particular creditors of their lawful suits, and hinder and delay them in the recovery of their just demands, is confessed or proved, still the assignment, if by its terms all the property which it embraces must be applied ratably or otherwise to the payment of debts, is upheld as valid and effectual. The mere intent to avoid an execution or other legal process does not in point of law make it void. It may even be made on the same day that a verdict is rendered against the assignor, or the claim of the creditor assailing it may be specially in the contemplation of the debtor. It will not in such case be void, even as against the persons who are in fact very materially hindered and delayed, and were meant to be so. It is valid even against the creditors whom it deprives, and is intended to deprive of that full satisfaction of their debts which by their superior diligence in prosecuting their suits they would otherwise have certainly obtained. The explanation is that, although in these cases the intent to hinder and delay

the creditors is manifest, it is just as certain that there is no intent to cheat or defraud them, and the reasonable construction of the statute is that it is only such a hindrance or delay as is intended to operate, or, if permitted, could operate as a fraud upon the creditors, that was meant to be prohibited. All the law can reasonably demand of a debtor is the faithful application of his entire property to the satisfaction of his debts, and where, by the terms of the assignment, this is secured, the hindrance or delay which they create, however they may operate to the prejudice of particular creditors, are disregarded, since they are only the necessary means of accomplishing a justifiable and lawful end. They fall, it is true, within the words of the statute; but as they are free from the imputation of fraud, and produce no benefit to the debtor at the expense of the creditors, they are not embraced within its meaning, and are justly excluded from its operation. It makes no difference, therefore, that the debtor is in failing circumstances, that suits are threatened, that judgments exist against him, or that executions against him are momentarily expected. Under any or all of these contingencies he has the full and absolute right to dispose of his property for the payment of his debts. The fact therefore that the assignment is made for the purpose of avoiding the preference that might otherwise be obtained by legal process in a race of eager diligence by disappointed creditors does not make the assignment invalid. Such is generally the motive to the making of such an assignment.''

Although the English and some American decisions support a contrary view, it is believed that the better considered American authorities support the doctrine announced in the excerpt last above quoted: *Hoffman* v. *Mackall,* 5 Ohio St. 124 (64 Am. Dec. 637); *Nicholson* v. *Leavitt,* 6 N. Y. Super. Ct. 252 (6 N. Y. 510, 57 Am. Dec. 499); *Malcolm* v. *Hall,* 9 Gill (Md.), 177 (52 Am. Dec. 688); *Mayer* v. *Hellman,* 91 U. S. 496 (23

L. Ed. 377); also, cases already cited from note to Burrill on Assignments, §§ 9, 13.

5. No fraud or bad faith is alleged in the answer, and where, as in this case, plaintiff sets out in the complaint the sources of his title and alleges possession under it, it is necessary, if defendants wish to show fraud in the transactions, that they allege that fact in the answer: 20 Cyc. 748, and cases cited in note; *Seeleman* v. *Hoagland,* 19 Colo. 231 (34 Pac. 995). This case was tried before the opinion in *Pelton* v. *Sheridan,* 74 Or. 176 (144 Pac. 410) was rendered, and we think that the learned and experienced judge erred in taking it away from the jury.

The judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.                                    REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BEAN concur.

MR. JUSTICE BENSON took no part in the consideration of this case.

----

Motion to dismiss submitted October 8, denied November 16, 1915.