## John P. Cook and others v. Eli B. Rogers.

*Assignments for benefit of creditors: Garnishee proceedings: Bankrupt act.* The possession of the property of another by virtue of a valid common-law assignment to him from such other for the benefit of creditors, gives no right to creditors of such assignor to maintain garnishee proceedings against the assignee; there is nothing in the bankrupt act authorizing such a proceeding on the basis that the assignment is by that act rendered invalid.

*Assignments for benefit of creditors: Common-law principles: Insolvent laws: Bankrupt act.* There is no proper analogy between insolvent laws, correctly so called, and those principles of the common-law which allow and sanction the conveyance of his property by a debtor for the equal benefit of all his creditors, and no such resemblance or relation as to warrant the conclusion that because the existence of a federal bankrupt law suspends all state insolvent laws, it must therefore also suspend those common-law principles.

*Assignments for benefit of creditors.* The right to make a general assignment of all a man's property results from that absolute ownership which every man claims over that which is his own. Every debtor has a legal right to assign property for the security of debts due by him, and so far from such an act being reprehended by the law, it is justified and approved.

*Heard January 28. Decided February 26.*

Error to Hillsdale Circuit.

*L. N. Keating* and *James S. Galloway*, for plaintiffs in error.

*E. L. & M. B. Koon*, for defendant in error.

GRAVES, CH. J.

On the 18th of November, 1873, Albert Bow made a voluntary assignment of his property to Eli B. Rogers, for the equal benefit of all his creditors, no preferences being declared. Rogers accepted the trust and took possession.

A few days later the plaintiffs commenced a suit against Bow, in the circuit court, to recover a debt of some three hundred dollars they held against him.

On the institution of this suit, they at once proceeded by garnishee process in the same court against Rogers. And being summoned to appear and make disclosure on such process, he appeared on the 16th of December, 1873, and made a general denial. The plaintiffs then filed a series of special interrogatories to be answered by him, and on the 27th of the same month he appeared and answered categorically.

From these answers it appeared that Bow had assigned to him, as before stated, that the personal property assigned was estimated as worth several thousand dollars, and the real estate from twelve to fourteen hundred.

It also appeared that Rogers had no interest other than that of trustee, and that he was in possession of the assigned property when the summons was served upon him.

On the 27th of July, 1874, judgment was given in the principal suit against Bow for damages, two hundred and eighty-one dollars and thirty-one cents; and thereupon, and on the same day, the garnishee suit against Rogers, Bow's assignee, was brought on to be tried before the court without a jury, and it was expressly admitted that when Bow assigned he was indebted for more than a thousand dollars upon claims already due, and that Rogers received into his possession from Bow, under the assignment, and still retained, property exceeding in value the amount of the plaintiff's judgment against Bow.

The counsel for plaintiffs then prayed a finding by the court, and they likewise presented two propositions of law in the nature of requests to charge:

*First*, that plaintiffs were entitled to judgment against Rogers because the assignment was not in compliance with chapter two hundred and thirty-four compiled laws, entitled "Of the powers, duties and obligations of assignees of insolvent debtors *under this title ;*"

*Second*, that the plaintiffs were entitled to recover, because the assignment was void as contrary to, and not in conformity with, and made under the bankrupt law of the United States.

The court then made a finding of facts upon the disclosure and admissions, and decided as matter of law that the assignment was valid and passed the title of the property to Rogers in trust for Bow's creditors, and that the possession by Rogers of the property in virtue of the assignment gave no right to plaintiffs as creditors of Bow to maintain garnishee process against Rogers; and that Rogers was entitled to judgment for his costs and expenses, which were fixed at twenty dollars.

The plaintiffs excepted to the finding, and caused the case to be brought here on writ of error.

31 MICH.—50.

The case is a remarkable one. Bow's assignment, as before stated, was a common-law conveyance for the benefit of his creditors at large. It contained no preferences whatever, but provided for an equal distribution among all his creditors. There is no pretense that Rogers was not a suitable person to be assignee, and no hint is made against his responsibility. No fraud is found or imputed. The surrender of his property by Bow for the equal benefit of all his creditors, by the voluntary assignment, in no way exonerates him personally, or discharges his obligations, or can shield his future gains.

The first proposition of law submitted to the court is most properly abandoned. It was without a shadow of force. The second is, however, insisted on, and it is the only point attempted to be maintained, and an elaborate argument has been submitted in its favor.

Were it not for the apparent confidence of counsel that it possesses merit, we should dismiss it without a moment's hesitation and affirm the judgment.

Upon the case as it stands before us, it must be taken as true that the assignment was an honest conveyance to a proper person, and honestly and fairly intended to secure the full payment of all the creditors at the same time and within a reasonable period, if the property should be found sufficient, and if not, then to be distributed equally and ratably within a reasonable time among all the creditors.

Nevertheless *the plaintiffs prosecute this garnishee process under the state law against the assets so assigned and dedicated to all alike; and under such process insist upon their right, in the name of the bankrupt law, and as a consequence of its existence, to compel payment out of the assigned effects of their claim in full and without delay, whatever may be the consequence to other creditors having equal equities, and without heed to the fact of sufficiency or insufficiency of the fund to satisfy the just demands of other creditors.*

The proposition comes to this:

*Equal distribution of the property of the debtor, pro rata, is the main purpose which the bankrupt act seeks to accomplish,* as we are told by the supreme court of the United States (*Buchanan v. Smith, 16 Wall., 277, 301*), and yet a common-law assignment, made to a proper person and in perfect good faith, and squaring exactly with this "main purpose" of the bankrupt act, is not only to be disregarded as void, in a garnishee proceeding against the assignee in the state court, in the name and as a consequence of the existence of this act, but at the particular instance of parties who, by the very proceeding itself in which and under which the claim is set up, are solely aiming to disappoint and defeat such "main purpose" and secure to themselves present full satisfaction, without the slightest regard to the equal claims of other creditors.

Before yielding to a proposition so extravagant we should certainly require very convincing proof of its solidity and force.

The argument in its favor is in substance this: It is settled by authority from which there is no appeal, that the existence of a federal bankrupt law, *ipso facto,* suspends all state insolvent laws; that the common law prevailing in this state, on which voluntary assignments for the benefit of creditors are based, and to which they owe all their legal efficacy, is a part of the state system regulating and governing in cases of insolvency, and within the principle which causes a bankrupt act to work suspension of incompatible regulations, and hence no voluntary assignment for the benefit of creditors, however right, regular and proper in all respects in the abstract, can have any force or validity whatever, if made whilst a bankrupt law is in existence.

Without stopping to consider whether a garnishee proceeding before a justice or in the circuit court is a proper one for raising the question, and without pausing to notice several difficulties in the plaintiffs' case, it suffices to observe, that the second *term* involved in their proposition, and which they cannot dispense with, is fatally infirm.

There is no proper analogy between insolvent laws, correctly so called, and those principles of the common law here which allow and sanction the conveyance of his property by a debtor for the equal benefit of all his creditors, and no such resemblance or relation as to warrant the conclusion that if the existence of a bankrupt law suspends the first, it must also suspend the last.

Insolvent laws are not principles which are the birthright of the citizen and pervade the state as naturally as the right to acquire property and dispose of it; but they are artificial yet positive regulations made by the legislature to exonerate the person or property of the debtor, or both, and to relieve him from the pressure of creditors.

They neither originate in, nor rest upon any general right in the individual to contract. Neither do they at all depend finally upon any general and independent power of the individual in virtue of his proprietary right to handle his property in any honest way his judgment may dictate. On the contrary, they *are provisionary limitations of this power to contract and dispose of property,* and such as the legislature consider are justified on the ground of their general utility and advantage. They belong to the same family, and are often nearly, if not altogether, identical with what, by way of eminence, are called bankrupt laws.

They are induced by the same or resembling motives, and operate in the same direction. In short, they are so similar in design, complexion and operation, to laws which may be described as bankruptcy laws, that no court has yet been able to mark any distinct dividing line.

In consequence of this sameness, the common character of the objects, and the identity of the sphere of operations of these differently named laws, and in consequence of the supremacy due to laws made by congress pursuant to the federal provision respecting a bankrupt law, and in furtherance of the policy of that provision, and to avoid conflicting proceedings, it has been considered that the existence

of a congressional system ought to supersede or suspend the diverse systems established in the several states, and place the subject on common and equal ground throughout the whole union. Now, the regulations affected by this rule in the different states are extremely various. In some the legislation, it is believed, has gone so far as to absorb these common-law assignments for the benefit of creditors into the local system of insolvency regulations, or has connected the two by strong positive provisions. In other states the subject has been left at large, without any attempt to efface the natural distinction between the disposition made in virtue of ownership and the power of contracting, and the disposition commanded by positive law. Where this state of things exists, a common-law assignment for the benefit of creditors is something by itself, and resting on a distinct foundation. Such is the case here. An assignment of the kind before the court is not a proceeding, or any step in a proceeding, under or in connection with the proper insolvent laws of this state. The right of the debtor to make an assignment for the equal benefit of all his creditors stands here by itself, and on its own basis of the common law. It depends upon principles which would remain efficient if our insolvent laws were all repealed; and these principles possess a vital energy which precludes their suspension by the mere existence of a federal bankrupt law. *An act founded on them* may, no doubt, be decreed in a court of bankruptcy to be an *act* of bankruptcy; but we are not here dealing with any thing of that kind. What is this basis for conveying in trust for creditors, to which allusion is made? It is the right which every man having the general capacity to contract has to make honest and unforbidden contracts, and the right of disposition which is incident to ownership. "*The right to make a general assignment of all a man's property results from that absolute ownership which every man claims over that which is his own.*"—*Marshall, C. J.,* in *Brashear v. West, 7 Pet., 608, 614.* "Every debtor has a legal right to assign property

for the security of debts due by him, and so far from such an act being reprehended by the law, it is justified and approved."—*Story, J.,* in *Brown v. Minturn,* 2 *Gall.,* 557, 559; see also *United States v. Bank of United States,* 8 *Rob.,* 262–404; *Nicoll v. Mumford,* 4 *J. Ch.,* 522–529; *Robbins v. Embry,* 1 *Sm. & Marsh,* 207, 258; *Pickstock v. Lyster,* 3 *Mau. & Sel.,* 371; *Giddings v. Sears,* 115 *Mass.,* 505.

It is to be steadily borne in mind that we are not inquiring, and are not called upon to inquire, how a federal court would or might regard this assignment if it were regularly brought into question under bankruptcy proceedings against the assignor, and where its force would be directly examinable on an issue distinctly raised on the bankrupt law.

That is a question, as before stated, with which we have no concern. It is one which might regularly arise under the bankrupt act, and in a proceeding calling its energies into play.

The true question here is, not whether the assignment was an act of bankruptcy, but whether the bare circumstance, that the act was standing on the statute book of the union, deprived the owner of all power to convey his property to one in trust for the equal benefit of all his creditors, in perfect honesty and good faith, so that independently of any attempt by any one in any place to put the bankrupt law in motion, his conveyance must be deemed *absolutely void,* and not even sufficient to give the holding by the assignee any coloring of right in contemplation of law.

The grounds of the argument to uphold the affirmative have been examined, and they are not satisfactory. No adjudged case sustaining any such view has fallen under observation, whilst on the contrary a good many have been noticed which more or less strongly imply the opposite. Three or four may be particularly referred to.

In *Janes v. Whitbread,* property conveyed by one sub-

ject to the bankrupt law, in trust for creditors, was taken on execution against the assignor, and it came up on interpleader, whether the assignment was valid so as to defeat the levy. No point was made upon the necessary invalidity of the assignment as a consequence of the *existence* of the bankrupt law. The court *sustained* the *validity* of the *assignment.—Com. P., 5 E. L. & E., 431.*

*Coate and another v. Williams,* was a similar if not stronger case, and the *ruling was the same.—Excheq., 9 E. L. & E., 481.* The principle contended for in the case at bar, if sound, was applicable to these English cases.

In *Buchanan v. Smith, 16 Wall., 277,* a paper manufacturing company in New York, made a general assignment for the benefit of creditors, and Buchanan & Co., in the face of the assignment, proceeded in the state courts to get judgments against the assignors, and levied executions and secured the appointment of a receiver. Bankruptcy proceedings were instituted against the company, an assignee was appointed, and he filed a bill in the federal court to subject the estate, and remove the obstacles raised by the assignment, and the proceedings on the part of Buchanan & Co. in the state courts. No one pretended that the assignment was void as a consequence merely of the existence of the bankrupt law. The court disposed of it by saying that both sides had conceded that it was repugnant to a certain *local law of the state.*

In *McLean v. Meline, 3 McLean, 199,* a bill was filed by assignee in bankruptcy to set aside an assignment claimed to have been made by the bankrupt in contemplation of bankruptcy. The theory of the proceeding was the direct enforcement of the bankrupt act against the assignor and his estate, and it was based on the act itself. It was a specific assertion of the powers of the act in the appointed jurisdiction, against an object of those powers, and not an attempt, through a special proceeding under state laws, to set up the existence of the bankrupt law as enough to defeat the assignment. And I understand the court thought the assignment invalid when thus directly and dis-

tinctly assailed in bankruptcy, but at the same time conceded it would be valid on the basis of the state laws, and when not tried in bankruptcy. There are many cases having the same bearing.

Now, if the position taken by the plaintiffs in the case at bar is valid, it is remarkable that in the cases cited, and many similar ones, neither court nor counsel should have had any suspicion of it. So plain and ready a ground of decision could not have been overlooked. It must have been taken for granted that the simple existence of a bankrupt law could not render a common-law assignment, *ipso facto,* void.

I think the point raised is untenable, and that the judgment below should be affirmed, with costs.

CAMPBELL, and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.