**In the Matter of Clarence Henry PERRY, Bankrupt.**

**No. 14382.**

United States District Court
W. D. Michigan, S. D.

Jan. 7, 1958.

Allaben, Davids & Massie and Craig E. Davids, Grand Rapids, Mich., for petitioner.

R. Burr Cochran, Muskegon, Mich., for respondent.

Benjamin W. Franklin, Stanton, Mich., amicus curiae.

STARR, Chief Judge.

On November 9, 1956, Clarence Henry Perry purchased a used 1955 Ford V-8 automobile from Gene's Motor Sales in Muskegon, Michigan, on an instalment-sales contract, which was subsequently assigned by Gene's Motor Sales to Associates Discount Corporation. This contract, which by its terms and provisions was in legal effect under the law of Michigan a chattel mortgage,[1] will hereafter in this opinion be referred to as a chattel mortgage. It was recorded in the office of the register of deeds of Ottawa county on November 19, 1956, and during the interim between November 9th and November 19th one Ralph Secory, without notice of the mortgage, extended credit to Perry for the purchase price of certain petroleum products.

On December 5, 1956, Perry filed a voluntary petition in bankruptcy and was adjudged a bankrupt. The matter was referred to the referee in bankruptcy, and George H. Cross was appointed and qualified as trustee of the bankrupt's estate. Thereafter on the trustee's petition the referee entered an order directing the Associates Discount Corporation, as holder of the chattel mortgage executed by Perry, to show cause why the mortgage should not be declared null and void as against creditors of the bankrupt and the trustee of the bankrupt's estate. Following a hearing on the trustee's petition, the referee entered an order on April 26, 1957, determining the mortgage in question to be null and void and denying all claims of Associates Discount Corporation to priority, preference or security thereunder. The referee's order further provided in effect that Associates Discount Corporation could file proof of its claim as a general creditor for the amount due under the chattel mortgage.

The Discount Corporation has filed a petition for review of the referee's order of April 26, 1957, and the question presented to this court is whether the

1. In re Jay's Food Market, D.C.E.D.Mich., 119 F.Supp. 396, and authorities therein cited.

bankruptcy proceeding by Clarence Henry Perry was an insolvency proceeding within the meaning of the 1956 amendment of the State recording statute, which provided that a chattel mortgage shall not be void in the case of "insolvency proceedings * * * if filed within 14 days from the date thereof." The Michigan chattel-mortgage-recording statute, Comp.Laws Mich.1948, § 566.140, prior to its amendment provided in part:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods or chattels are located, and also where the mortgagor resides."

The above statute was amended by Act No. 153, Pub.Acts Mich.1956, effective August 11, 1956, and this amendment, which was in effect when the chattel mortgage in question was executed and filed and when Perry was adjudged a bankrupt, provides as follows:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as

against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the register of deeds of the county where the goods or chattels are located, and also where the mortgagor resides, * * *: *Provided, however, That any such mortgage shall not be void in the case of insolvency proceedings as against the creditors of the mortgagor if filed within 14 days from the date thereof.*" [2]

Associates Discount Corporation contends that the Perry chattel mortgage which it holds is valid and that the referee's order of April 26, 1957, should be reversed and set aside. It bases its contention on the ground that the bankruptcy proceeding by Perry constituted an insolvency proceeding within the meaning of the above 1956 amendment of the recording statute and that the chattel mortgage was filed within 14 days after its execution, as provided in said amendment. On the other hand, the trustee contends that the referee's order declaring the chattel mortgage null and void should be affirmed because the bankruptcy proceeding by Perry was not an insolvency proceeding within the meaning of the 1956 amendment. This contention is based on the ground, as stated in the referee's opinion, that as the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. does not require insolvency either in fact or by allegation as a prerequisite to the institution of voluntary bankruptcy proceedings, the term "insolvency proceedings" as used in the 1956 amendment does not encompass or include bankruptcy proceedings.

Therefore, the precise question to be determined is whether the term "insolvency proceedings" as used in the 1956 amendment of the recording statute includes the bankruptcy proceeding by Perry. If that term includes bank-

---

2. This provision was again amended by Act No. 233, Pub.Acts Mich.1957, to provide in part as follows: "Provided, however, That no purchase money mortgage shall be void as against the creditors of the mortgagor if filed within 14 days from the date of the execution of such mortgage."

ruptcy proceedings, the chattel mortgage in question was valid when it was recorded within 14 days after its execution, and the referee's order should be reversed. On the other hand, if the term "insolvency proceedings" as used in the 1956 amendment did not include bankruptcy proceedings, the chattel mortgage here in question is void as against creditors of the bankrupt and the trustee of the bankrupt's estate, for the reason that during the interim between the execution and recording of the mortgage Ralph Secory as a good-faith interim creditor, without notice of the mortgage, had extended credit to the bankrupt. Bankruptcy Act, § 70, 11 U.S.C.A. § 110; Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133; General Motors Acceptance Corporation v. Coller, 6 Cir., 106 F.2d 584, certiorari denied 309 U.S. 682, 60 S.Ct. 723, 84 L.Ed. 1026.; In re Tobias, D.C., 150 F.Supp. 288; In re Truscott Boat & Dock Co., D.C., 92 F. Supp. 430; Deane v. Fidelity Corporation of Michigan, D.C., 82 F.Supp. 710; Ransom & Randolph Co. v. Moore, 272 Mich. 31, 261 N.W. 128.

 Therefore, the court must determine what the Michigan legislature meant and intended by the term "insolvency proceedings" as used in the 1956 amendment. There is apparently no record of legislative history relating to the enactment of the 1956 amendment from which the legislative intent and purpose in the use of the term "insolvency proceedings" might be determined. Hence, under the well-established rule of statutory construction, the term "insolvency proceedings" must be given its customary, ordinary, and common meaning. As stated in Deloria v. Atkins, 158 Mich. 232, 241, 242, 122 N.W. 559, 562:

"The real sense of the Legislature is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense. Bohn v. Brown, 33 Mich. [257] 260, 261."

In Stocin v. C. R. Wilson Body Co., 205 Mich. 1, 4, 171 N.W. 352, 353, the court quoted with approval from Corpus Juris as follows:

" 'In giving construction to such statutes words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject-matter relative to which they are employed.' " See also Reetz v. Schemansky, 278 Mich. 626, 631, 270 N.W. 811.

In Jones v. Grand Ledge Public Schools, 349 Mich. 1, 9, 10, 84 N.W.2d 327, 331, the court said:

"In the early case of People ex rel. Twitchell v. Blodgett, 13 Mich. 127, [167, 168, 173] Justice Cooley said:

" 'There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear, and intelligible. The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern: * * *

" 'And, believing as I do, that a high and sacred regard for law and constitutional order is being begotten of these times. I regard it as especially important that the judiciary should do nothing to postpone or to check this result by decisions which strain or bend the meaning of words to meet unexpected emergencies.'

* * * * * *

"Among other decisions recognizing and applying the rule that the language of a legislative enactment must be given its ordinary meaning are: Nordman v. Calhoun, 332 Mich. 460, 51 N.W.2d 906; and

Stadle v. Township of Battle Creek, 346 Mich. 64, 77 N.W.2d 329."

■■ It is also an established rule of statutory construction that legislative enactments must be considered in their entirety, and no statutory expression may be treated as superfluous or without meaning. As stated in Potter v. Safford, 50 Mich. 46, 48, 14 N.W. 694, 695: "We must suppose every word employed in a statute has some force and meaning, and was made use of for some purpose." See also Chamski v. Wayne County Board of Auditors, 288 Mich. 238, 257, 258, 284 N.W. 711; Chicago, Detroit & Canada Grand Trunk Junction R. Co. v. Simons, 210 Mich. 418, 423, 178 N.W. 12; Lovalo v. Michigan Stamping Co., 202 Mich. 85, 90, 167 N.W. 904.

Bouv. Law Dict., Rawles Third Revision, p. 1601, defines insolvency as follows:

"The condition of a person who is insolvent (q.v.). Inability to pay one's debts.

"Bankruptcy, which is one species or phase of insolvency, denotes the condition of a trader or merchant who is unable to pay his debts in the course of business; 2 Bell, Com. 162; 1 M. & S. 338; Herrick v. Borst, 4 Hill, N.Y., 650; Thompson v. Thompson, 4 Cush., Mass. [127], 134. Insolvency, then, as distinguished from strict bankruptcy, is the condition or status of one who is unable to pay his debts; and insolvent laws are distinguished from strict bankruptcy laws by the following characteristics:

"Bankruptcy laws apply only to traders or merchants, insolvent laws, to those who are not traders or merchants. Bankrupt laws discharge absolutely the debt of the honest debtor; Ogden v. Saunders, 12 Wheat. [213], 230, 6 L.Ed. 606; LeRoy v. Crowninshield, Fed.Cas.No. 8,269, 2 Mas[on] 161; Pugh v. Bussel, 2 Blackf., Ind., 394; Van Hook v. Whitlock, 26 Wend., N.Y., 43, 37 Am. Dec. 246; 4 B. & Ald. 654; Baldw.

296. Insolvent laws discharge the person of the debtor from arrest and imprisonment, but leave the future acquisitions of the debtor still liable to the creditor; Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529; Pollitt v. Parsons, 2 H[ar.] & J., Md., 61. Both laws contemplate an equal, fair, and honest division of the debtor's present effects among his creditors pro rata. A bankrupt law may contain those regulations which are generally found in insolvent laws, and an insolvent law may contain those which are common to a bankrupt law; per Marshall, C. J., Sturges v. Crowninshield, 4 Wheat. [122], 195, 4 L.Ed. 529. And insolvent laws quite coextensive with the English bankrupt system have not been infrequent in our colonial and state legislation, and no distinction was ever attempted to be made in the same between bankruptcies and insolvencies; 3 Sto.Const. 11; Bish. Insolv. Debt. 4."

As indicated by Bouvier's definition, the term insolvency is broader than bankruptcy, and historically bankruptcy was included within its scope. In the early case of Phipps v. Harding, 7 Cir., 70 F. 468, 470, the court said: "'Insolvency,' in a popular sense, means 'bankruptcy.'" In Hanover National Bank of City of New York v. Moyses, 186 U.S. 181, on page 185, 22 S.Ct. 857, on page 859, 46 L.Ed. 1113, Chief Justice Fuller, in referring to Justice Story's Commentaries on the Constitution, said:

"The whole subject is reviewed by that learned commentator in chapter XVI, §§ 1102 to 1115 of his works, and he says (§ 1111) in respect of 'what laws are to be deemed bankrupt laws within the meaning of the Constitution:' 'Attempts have been made to distinguish between bankrupt laws and insolvent laws. For example, it has been said, that laws, which merely liberate the person of the debtor, are insolvent laws, and, those, which discharge the contract, are bankrupt laws.

But it would be very difficult to sustain this distinction by any uniformity of laws at home or abroad. * * Again, it has been said that insolvent laws act on imprisoned debtors only at their own instance, and bankrupt laws only at the instance of creditors. But, however true this may have been in past times, as the actual course of English legislation, it is not true, and never was true, as a distinction in colonial legislation. In England it was an accident in the system, and not a material ground to discriminate, who were to be deemed in a legal sense insolvents, or bankrupts. And if an act of Congress should be passed, which should authorize a commission of bankruptcy to issue at the instance of the debtor, no court would on this account be warranted in saying that the act was unconstitutional, and the commission a nullity. It is believed that no laws ever were passed in America by the colonies or States, which had the technical denomination of "bankrupt laws." But insolvent laws, quite coextensive with the English bankrupt system in their operations and objects, have not been unfrequent in colonial and state legislation. No distinction was ever practically, or even theoretically, attempted to be made between bankruptcies and insolvencies. And a historical review of the colonial and state legislation will abundantly show, that a bankrupt law may contain those regulations which are generally found in insolvent laws, and that an insolvent law may contain those, which are common to bankrupt laws.' "

More recently the Supreme Court of the United States in Continental Illinois National Bank & Trust Co. of Chicago v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 668, 55 S.Ct. 595, 603, 79 L.Ed. 1110, stated: "No distinction, practically or even theoretically, could be made between bankruptcies and in-

solvencies. 2 Story on the Constitution 4th Ed., § 1111."

In Ex parte Hull, D.C.N.Y., 12 Fed. Cas. pages 853, 856, No. 6,856 the court said:

"In a general sense, and to all practical ends in business transactions, there is no sound distinction between bankruptcy and insolvency. It is believed that the terms are used convertibly in ordinary parlance; they are so historically. Montifiore, Com. Dict. voce 'Bankrupt'; M'Culloch, Dict. (Last Ed.) Id. Legal compilers recognize the same common import of the words in the law. Petersd. Abr. Id. And our highest tribunals, called upon to collate and discriminate the one from the other, admit there is no principle even in a statute applicable to either condition of debtors, which marks with exactness when it is an insolvent law and when it becomes a bankrupt law. [Sturges v. Crowninshield] 4 Wheat. 122, [17 U.S. 122] [4 L.Ed. 529]; [Ogden v. Saunders] 12 Wheat. [213], 273, [25 U.S.] [213], 273."

The law seems to be well established that the words insolvency and bankruptcy are synonymous terms in ordinary usage, meaning, and common understanding. Furthermore, in ordinary parlance and understanding there is no distinction between insolvency proceedings and bankruptcy proceedings, and the terms are used interchangeably.

An examination of the Michigan statutes discloses certain proceedings which are predicated upon the financial condition of a corporation or person and their inability to pay debts. Such proceedings are: Receiverships for ecclesiastical corporations, Comp.Laws Mich. 1948, § 450.180; receiverships for insolvent brokers and dealers in securities, § 451.128; receiverships for insolvent banks, § 487.115 et seq.; custodianships for building and loan associations in unsound condition, § 489.21; receiver-

ships for finance companies, § 492.11 et seq.; liquidation and dissolution of domestic insurance companies, § 503.1 et seq.;[3] voluntary dissolution of corporations, § 640.1 et seq.; involuntary dissolution of insolvent corporations, § 641.8; injunctions against insolvent banking corporations, § 641.9 et seq.; equity proceedings to ascertain and enforce directors' or stockholders' liability, § 641.17; debtors' assignments for the benefit of creditors, § 642.1 et seq.; and workers' assignment of future wages, § 691.801 et seq.

The trustee contends that the legislature, in employing the term "insolvency proceedings" in the 1956 amendment, was referring only to the above-mentioned statutory proceedings and, in particular to those provisions in Comp. Laws Mich.1948, § 642.1 et seq., providing for the relief of debtors by assignments for the benefit of their creditors. However, it is clear that assignments for the benefit of creditors do not constitute insolvency proceedings. Stellwagen v. Clum, 245 U.S. 605, 615, 38 S.Ct. 215, 62 L.Ed. 507; Cook v. Rogers, 31 Mich. 391. Furthermore, the court is convinced that the legislature did not intend to limit the application of the term "insolvency proceedings" as used in the 1956 amendment of the chattel-mortgage-recording statute to the statutory proceedings enumerated above If the term "insolvency proceedings" were construed to apply only to the State statutory proceedings and not to bankruptcy proceedings, the 1956 amendment would be so limited and narrow as to be purposeless and without meaning. For the reasons herein stated the court concludes:

(1) That the term "insolvency proceedings" as used in the 1956 amendment of the chattel-mortgage-recording statute includes Federal bankruptcy proceedings.

(2) That the bankruptcy proceeding by Clarence Henry Perry was an insolvency proceeding within the meaning of the 1956 amendment of the State recording statute.

(3) That as the Perry chattel mortgage held by Associates Discount Corporation was filed of record within 14 days after its execution on November 9, 1956, it is a good and valid mortgage as against the trustee in bankruptcy and creditors of the bankrupt.

(4) That the referee erred in holding that the chattel mortgage held by Associates Discount Corporation was null and void.

The order of the referee entered April 26, 1957, determining the chattel mortgage in question to be null and void is reversed and set aside. An order will be entered remanding this matter to the referee in bankruptcy for further proceedings consistent with this opinion.

---

3. Repealed by Act No. 218, Pub.Acts Mich. 1956, effective Jan. 1, 1957, now

Comp.Laws Supp.Mich.1956, § 500.7800 et seq.